179 Cal.App.4th 709 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
GERMAN EDWARD SANCHEZ, Defendant and Appellant.
No. E046099.
Court of Appeals of California, Fourth District, Division Two.
November 23, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*712 Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Assistant Attorney General, Ronald Jakob and Jennifer A. Jadovitz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RICHLI, J.
When defendant German Edward Sanchez was 17 years old, he and an accomplice robbed two female employees of a pizza parlor. There *713 was evidence that defendant was a member of the Corona Varrio Locos gang (although his accomplice apparently was not).
A jury found defendant guilty on two counts of second degree robbery. On each of these two counts, it found a personal firearm use enhancement to be true. (Pen. Code, § 12022.53, subd. (b).) It also found defendant guilty of the substantive offense of gang participation.[1] (Pen. Code, § 186.22, subd. (a).) However, it found gang enhancement allegations in connection with the robbery counts to be not true. (Pen. Code, § 186.22, subd. (b).) The trial court sentenced defendant to a total of 16 years in prison.
(1) Defendant contends that the imposition of separate and unstayed sentences for both gang participation and robbery constituted multiple punishment in violation of Penal Code section 654 (section 654). We will hold that section 654 precludes multiple punishment for both (1) gang participation, one element of which requires that the defendant have "willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of th[e] gang" (Pen. Code, § 186.22, subd. (a)), and (2) the underlying felony that is used to satisfy this element of gang participation. Accordingly, we will modify the judgment to bring it into compliance with section 654.
Defendant also contends that there was insufficient evidence that he promoted, furthered, or assisted in any felonious criminal conduct by gang members to support his conviction for gang participation. We are publishing this portion of our opinion because it furnishes some of the necessary legal background for our discussion of section 654. However, we will hold that there was sufficient evidence of this element.
In the unpublished portion of this opinion, we find no other prejudicial error. Hence, we will affirm the judgment as modified.

I

FACTUAL BACKGROUND

A. The Robbery of Five Buck Pizza.

On December 7, 2005, victims Bianca Mora and Diana Alvarez were working at Five Buck Pizza in Corona. Around 5:30 p.m., defendant and "another guy" came into the restaurant. The two men were wearing bandannas over their faces and holding guns. They pointed their guns at the women and told them to stop what they were doing.
*714 Despite defendant's bandanna, Mora recognized him. She had "s[een] him around" at her high school. Also, defendant's girlfriend worked at Five Buck Pizza, so Mora had seen him at the restaurant.
Defendant approached Mora, still pointing his gun at her. He told her to open the safe. He then led her to the back of the building, where the safe was. At first, Mora made a show of trying to open the safe but without actually entering any numbers. After about two minutes of this, however, defendant got mad; he yelled at her and hit her with the gun "several times." She then tried to actually open the safe. At first, it seemed to be "jammed," but eventually it opened. She gave defendant the money that was inside.
Meanwhile, the second man "grabbed" Alvarez, put his gun up to her back, and told her to open the register. For some reason, however, she was not able to do so. Still holding the gun to her back, the second man walked her back to where defendant and Mora were. After a discussion between the men, the second man pushed Alvarez into the bathroom. Alvarez then heard the second man say, "[C]ustomers. Let's bounce."
Alvarez was just taking out her cell phone to call 911 when the second man entered the bathroom. He told her to give him the phone. When she said no, he "pushed [her] against the wall and put the gun to [her] stomach and told [her] to give him the cell phone." She then complied. The two men left.
When the police interviewed Mora, she told them that defendant was one of the robbers. She identified a photo of him. She also identified him in a field lineup.
Like Mora, Alvarez knew defendant from high school and from his dating another employee of the restaurant. However, she was not able to identify either of the robbers. She also admitted that she would not be able to tell "whether a gun is real or fake."
After the police arrested defendant, he admitted that he and his cousin, Angel Hernandez,[2] had committed the robbery. He explained that his family had just been evicted, "so he took it upon himself to go get some money so he could find a place for him and his family to live." He picked Five Buck Pizza "because he was familiar with the store and thought it would be easy."
Defendant claimed that the guns used during the robbery were only BB guns. He also claimed that, when he ran out the back door, the bag in which *715 he was carrying the money ripped and the money fell out. He said that he "cut through" a nearby apartment complex, then ran home.
The police were never able to find any of the proceeds of the robbery nor the guns that were used. In the apartment complex that defendant had identified, however, they did find two Bank of America money bags that had been taken from Five Buck Pizza. "[S]ome kids" turned in a cash register money tray, also taken from Five Buck Pizza, which they said they had found in the same apartment complex.

B. Gang Evidence.

Detective Armand Tambouris of the Corona Police Department testified as a gang expert. He described the Corona Varrio Locos, or CVL, as a gang active in and around Corona. CVL members used identifying signs or symbols, including "4th Street" and a crown.[3] They also carried blue bandannas.
According to Detective Tambouris, CVL's primary activities included robberies, burglaries, shootings, stabbings and other assaults, graffiti, and vandalism. Exhibits 7 and 8 showed that Matthew Lopez and Jesse York had each pleaded guilty to robbery. Detective Tambouris testified that Lopez and York were both members of CVL.
In the opinion of Detective Tambouris, defendant was "an active member" of CVL. In September 2005, Detective Tambouris's partner had contacted defendant. During that contact, defendant admitted that he was a member of CVL, having been "jumped in" when he was 11. Defendant added that "CVL was upset with him because he had not been putting in work." Detective Tambouris explained that "putting in work" meant committing crimes. At the time of the contact, defendant was wearing a hoodie that said "[S]outh [S]ide 13," as well as a blue bandanna. The number "13" is associated with Southern California, or "Sureño," gangs.
Detective Tambouris's opinion that defendant was a member of CVL was also based, in part, on the following items found by defendant's bed during a search of his home.[4]
Exhibit 1 was a photo showing defendant with "CVLS," "CT," "4th Street," and "13" written (though not tattooed) on his body. "CT" stood for "Crown Town," meaning Corona.
*716 Exhibit 4 consisted of multiple photos, including one of defendant and a female jointly flashing a "13" sign.
Exhibit 5 was a photo showing defendant and four other men; defendant and a second man were wearing blue bandannas, and this second man was flashing a "CVL" gang sign. A third man in the photo was flashing a "13" sign.
Exhibit 6 was a photo of a drawing of a crown with the number "4" written over it, the words "CVLS" and "Corona" on it, and the word "Shorty" underneath it.
In Detective Tambouris's opinion, the Five Buck Pizza robbery was committed for the benefit of CVL. He testified that the commission of any violent crime by a CVL member tended to get respect for the gang and to intimidate victims and witnesses so that they would not testify. Also, the gang would benefit financially from the proceeds of a robbery.

C. Defense Evidence.

Defendant's mother and stepfather both testified that, on the day of the robbery, the family received an eviction notice.

II

THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE GANG PARTICIPATION CONVICTION
Defendant contends that there was insufficient evidence, in several respects, to support the gang participation charge.
(2) The crime of gang participation is committed by "actively participat[ing] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . willfully promot[ing], further[ing], or assist[ing] in any felonious criminal conduct by members of that gang . . . ." (Pen. Code, § 186.22, subd. (a).)
A "pattern of criminal gang activity" is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ." (Pen. Code, § 186.22, subd. (e).) The specified offenses *717 are generally serious crimes, including homicide, robbery, burglary, and aggravated assault. (Ibid.; see also id., subd. (j).)
A., B.[*]

C. Evidence That Defendant Promoted, Furthered, or Assisted in Felonious Criminal Conduct by Gang Members.

Defendant argues that there was insufficient evidence that he promoted, furthered, or assisted in any felonious criminal conduct by gang members.
(3) In People v. Castenada (2000) 23 Cal.4th 743 [97 Cal.Rptr.2d 906, 3 P.3d 278], our Supreme Court referred to this "promote/further/assist" element as aiding and abetting, stating: "[Penal Code] section 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity. Thus, a person who violates section 186.22(a) has also aided and abetted a separate felony offense committed by gang members . . . . [Citations.]" (Id. at p. 749, italics added.)
Here, as far as the evidence showed, defendant was not involved in any felonious conduct other than the charged robberies. In those robberies, he was a perpetrator, not an aider and abettor. Citing Castenada, defendant argues that perpetration fails to satisfy the "promote/further/assist" element.
(4) In People v. Ngoun (2001) 88 Cal.App.4th 432 [105 Cal.Rptr.2d 837] (Fifth Dist.), however, the court held that the promote/further/assist element can also be satisfied by evidence that the defendant was the perpetrator of a felony. (Id. at pp. 435-437.) It explained: "Courts should give statutory words their plain or literal meaning unless that meaning is inconsistent with the legislative intent apparent in the statute. [Citations.] . . . [L]iability attaches to a gang member who `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.] In common usage, `promote' means to contribute to the progress or growth of; `further' means to help the progress of; and `assist' means to give aid or support. [Citation.] The literal meanings of these critical words squares with the expressed purposes of the lawmakers. An active gang member who directly perpetrates a gang-related offense `contributes' to the accomplishment of the offense no less than does an active gang member who aids and abets or who is otherwise connected to such conduct. Faced with the words the legislators chose, we *718 cannot rationally ascribe to them the intention to deter criminal gang activity by the palpably irrational means of excluding the more culpable and including the less culpable participant in such activity." (Id. at p. 436.)
Admittedly, the court also reasoned that "[s]everal reported opinions have involved a defendant convicted both as a perpetrator of a substantive felony and as a gang member under [Penal Code] section 186.22, subdivision (a) based upon the same felony. . . . Although we recognize that the contention advanced by appellant here was not raised in any of these cases, all of these convictions were affirmed without mention of the issue." (People v. Ngoun, supra, 88 Cal.App.4th at pp. 436-437.) According to Ngoun, one such case was Castenada itself. (Ngoun, at p. 437.)
We do not necessarily agree with this characterization of Castenada. There, in addition to gang participation, the defendant was convicted of robbery and attempted robbery. (People v. Castenada, supra, 23 Cal.4th at pp. 745-746.) Victims Venegas and Castillo had been walking down the street together "when defendant and two companions began to follow them. Defendant pointed a handgun at Venegas and demanded money, while one of his companions made a similar demand of Castillo. Both victims said they had no money. Defendant then took Venegas's watch and tried to pull a gold chain off his neck. When Venegas broke away and screamed for help, defendant and his companions fled." (Id. at p. 745.) Thus, the defendant was the direct perpetrator of the robbery of Venegas; however, he was arguably only an aider and abettor of the attempted robbery of Castillo. To put it another way, there was substantial evidence that the defendant had aided and abetted a felony.
In any event, as the court noted later in Castenada, there the defendant "d[id] not contest . . . that through the robbery and attempted robbery . . ., he `promote[d], further[ed], or assist[ed]' felonious criminal conduct of [a] gang in violation of [Penal Code] section 186.22(a)." (People v. Castenada, supra, 23 Cal.4th at p. 753.) Hence, as the Ngoun court noted, in Castenada itself, the Supreme Court was not actually called upon to decide whether evidence that the defendant perpetrated a felony could be sufficient to satisfy the promote/further/assist element.
For precisely that reason, however, the language in Castenada equating the promote/further/assist element to aiding and abetting was dictum. On the other hand, the reasoning of Ngoun, which was not dictum, is compellinga gang member who perpetrates a felony by definition also promotes and furthers that same felony. Thus, we do not believe that Castenada required the Ngoun court to come to any different conclusion.
*719 We also note a differentalthough relatedargument that is lurking in this case. The promote/further/assist element requires that the defendant "promote[], further[], or assist[] in any felonious criminal conduct by [gang] members . . . ." (Pen. Code, § 186.22, subd. (a), italics added.) One could argue that this element cannot be satisfied by evidence that the defendant perpetrated a felony alone or with nongang members (such as defendant's cousin).
In Ngoun, the statement of facts was regrettably left unpublished. (See People v. Ngoun, supra, 88 Cal.App.4th at p. 434.) The court's discussion, however, indicates that, while the defendant was the direct perpetrator of murder and aggravated assault, he was aided and abetted by at least one other gang member. It stated: "Appellant was an active gang member who went with other Modesto Hit Squad members to a party where he knew other rival gang members would be. He went armed in anticipation of a confrontation and asked a fellow gang member to `watch his back.' During the party there was a conflict between members of the two gangs. Appellant was `disrespected' by members of Oak Street Posse. He fired into a crowd of people which included members of the rival gang, including those with whom he had had an adversarial encounter earlier in the evening." (Id. at p. 437.) Accordingly, this somewhat different argument was not presented in Ngoun.
However, it was presented squarely later in People v. Salcido (2007) 149 Cal.App.4th 356 [56 Cal.Rptr.3d 912] (Fifth Dist.). There, the evidence showed that the defendant had committed felonies, as the direct perpetrator, on two occasions. First, in April 2005, he had been found to be in possession of concealed weapons. (Id. at pp. 359-360.) Second, in September 2005, he had been found to be driving a stolen car while having a concealed, loaded firearm in the car. (Id. at p. 360.) On both occasions, he had been in the presence of fellow gang members (id. at pp. 361-362), but there was no evidence that those gang members had aided and abetted his crimes (id. at p. 368).
On appeal, the defendant argued that the trial court had erred by instructing that the promote/further/assist element could be satisfied by evidence that he "`either directly and actively commit[ed] a felony offense or aid[ed] and abett[ed] felonious criminal conduct by members of th[e] gang.'" (People v. Salcido, supra, 149 Cal.App.4th at p. 366, some italics omitted; see also id. at p. 367.) As the court explained: "Salcido attempts to distinguish Ngoun on the ground that there, other gang members actually were present when the appellant committed the murder and assaults underlying his [Penal Code] section 186.22, subdivision (a), conviction. He contends Ngoun stands for the proposition that a `[principal] who commits a crime jointly with other gang members is equally liable under section 186.22, subdivision (a).' Salcido *720 asserts that [section 186.22,] subdivision (a) imposes liability on perpetrators only if they commit the crime in concert with other gang members. In Ngoun, however, we placed no limitation on our holding. To the contrary, we concluded that the subdivision `applies to the perpetrator of felonious gang-related criminal conduct as well as to the aider and abettor.' [Citation.] Even though in Ngoun other gang members were present when the crimes were committed, it is uncertain whether they participated in the crimes. [Citation.] Here, Salcido was accompanied by known gang members on both occasions, although there was no evidence they participated in Salcido's crimes. In each case, however, `[t]he evidence supports a reasonable inference that the [crimes] were intended by appellant to promote, further and assist the gang in its primary activitiesthe commission of criminal acts and the maintenance of gang respect.' [Citation.]" (Id. at p. 368.)
Here, defendant appears to be arguing only that the promote/further/assist element cannot be satisfied by evidence that he was a direct perpetrator. This argument, as he recognizes, was rejected in Ngoun. He does not appear to be arguing that this element also requires evidence that he was aided and abetted by one or more fellow gang members. We therefore deem this contention forfeited. Even if it had been raised, however, we would reject it on the authority of Salcido.
In sum, then, we find sufficient evidence to support the gang participation conviction.

D. Instructional Error.[*]

III-VIII[*]

IX

PENAL CODE SECTION 654
Defendant contends that, in light of the terms imposed for robbery, the term imposed for gang participation should have been stayed under section 654.
*721 The trial court calculated the sentence as follows:
Count 1 (robbery), the principal term: Two years (the low term), plus 10 years on the personal firearm use enhancement.
Count 2 (robbery): Eight months (one-third the midterm), plus three years four months (one-third the fixed term) on the personal firearm use enhancement, to be served consecutively.
Count 3 (gang participation): Sixteen months (the low term), to be served concurrently.
Section 654, subdivision (a), as relevant here, provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."
(5) ". . . `"Section 654 has been applied not only where there was but one `act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.] [¶] Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (People v. Rodriguez (2009) 47 Cal.4th 501, 507 [98 Cal.Rptr.3d 108, 213 P.3d 647].)
"[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored `multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, `even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (People v. Harrison (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)
"`A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' [Citation.]" (People v. Racy (2007) 148 Cal.App.4th 1327, 1336-1337 [56 Cal.Rptr.3d 455].)

*722 A. People v. Herrera.

The earliest case dealing with the application of section 654 in the context of a gang participation charge is People v. Herrera (1999) 70 Cal.App.4th 1456 [83 Cal.Rptr.2d 307] (Fourth Dist., Div. Three).
In Herrera, two gangs engaged in a series of retaliatory shootings. In the most recent one, shots were fired at a house occupied by members of the defendant's gang. One of them then drove and picked up the defendant, who explained to his girlfriend that "his `home boys were after the guys.'" (People v. Herrera, supra, 70 Cal.App.4th at p. 1461, fn. omitted.) The defendant and his cohort then drove by a house identified with the rival gang, made a U-turn, and drove by again, firing shots both times. On the first pass, two people were hit. (Ibid.)
As a result, the defendant was convicted of (among other things) one count of gang participation and two counts of attempted murder. (People v. Herrera, supra, 70 Cal.App.4th at p. 1462.) The court held that section 654 did not require the trial court to stay the gang participation term. It explained: "`[M]ultiple punishment . . . may be imposed where the defendant commits two crimes in pursuit of two independent, even if simultaneous, objectives. [Citations.]' [Citation.]
"The characteristics of attempted murder and street terrorism are distinguishable. . . . In the attempted murders, Herrera's objective was simply a desire to kill. For these convictions, the identities (or gang affiliations) of his intended victims were irrelevant." (People v. Herrera, supra, 70 Cal.App.4th at pp. 1466-1467.) At this point, the court noted that there was "sufficient [evidence] to establish the specific intent to kill required for both counts of attempted murder. [Citations.]" (Id. at p. 1467.)
It continued: "[U]nder [Penal Code] section 186.22, subdivision (a) the defendant must necessarily have the intent and objective to actively participate in a criminal street gang. However, he does not need to have the intent to personally commit the particular felony (e.g., murder, robbery or assault) because the focus of the street terrorism statute is upon the defendant's objective to promote, further or assist the gang in its felonious conduct, irrespective of who actually commits the offense. For example, this subdivision would allow convictions against both the person who pulls the trigger in a drive-by murder and the gang member who later conceals the weapon, even though the latter member never had the specific intent to kill. Hence, section 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang. The perpetrator of the underlying crime may thus possess `two independent, even if simultaneous, *723 objectives[,]' thereby precluding application of section 654. [Citation.]" (People v. Herrera, supra, 70 Cal.App.4th at pp. 1467-1468, fn. omitted.) At this point, the court found sufficient evidence that the defendant "intended to aid his gang in felonious conduct, irrespective of his independent objective to murder." (Id. at p. 1468.)
Finally, the court added: "[I]f section 654 were held applicable here, it would render [Penal Code] section 186.22, subdivision (a) a nullity whenever a gang member was convicted of the substantive crime committed in furtherance of the gang. `[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." [Citation.]' [Citation.] We do not believe the Legislature intended to exempt the most culpable parties from the punishment under the street terrorism statutes." (People v. Herrera, supra, 70 Cal.App.4th at p. 1468, fn. omitted.)
Thus, as we read Herrera, it held categorically that section 654 never precludes multiple punishment for both gang participation and the underlying felony (at least when the underlying felony requires a specific intent). As long as there is (1) sufficient evidence of the specific intent necessary to support the conviction for gang participation, and (2) sufficient evidence of the specific intent necessary to support the conviction for the underlying felony, there isas a matter of lawsufficient evidence that the defendant had two independent, if simultaneous, objectives.

B. People v. Vu.

Herrera was followed by the Fourth District, Division Three in People v. Ferraez (2003) 112 Cal.App.4th 925 [5 Cal.Rptr.3d 640] and by the Sixth District in In re Jose P. (2003) 106 Cal.App.4th 458 [130 Cal.Rptr.2d 810]. They both indicated that multiple punishment for gang participation and for the underlying offense is permissible as long as the underlying offense requires a different specific intent. (Ferraez, at p. 935 [possession of drugs with the intent to sell]; Jose P., at pp. 470-471 [robbery].) Thus, they added little to Herrera's analysis.
Thereafter, however, the Fourth District, Division Three decided People v. Vu (2006) 143 Cal.App.4th 1009 [49 Cal.Rptr.3d 765]. The author of Herrera was a concurring panel member in Vu. There, the defendant and other members of his gang conspired to kill the victim under the mistaken impression that he was a member of a rival gang. (Id. at pp. 1012-1021.) The defendant was convicted of (among other things) gang participation and conspiracy to commit murder. (Id. at pp. 1012-1013.)
The court held that section 654 required the trial court to stay the gang participation term. (People v. Vu, supra, 143 Cal.App.4th at pp. 1032-1034.) *724 It stated: "Herrera is distinguishable because the defendant was charged with a course of criminal conduct involving two gang-related, drive-by shootings in which two people were injured. [Citation.] . . .
"Under Neal,[8] Vu committed different acts, violating more than one statute, but the acts of conspiracy and street terrorism constituted a criminal course of conduct with a single intent and objective. That single criminal intent or objective was to avenge [a fellow gang member]'s killing by conspiring to commit murder. Although that intent or objective could be parsed further into intent to promote the gang and intent to kill, those intents were not independent. Each intent was dependent on, and incident to, the other." (People v. Vu, supra, 143 Cal.App.4th at p. 1034.)
At this point, we merely note that Vu's effort to distinguish Herrera was less than satisfying. As we mentioned, the defendant in Herrera drove by the same house twice, pausing only to make a U-turn in between, and fired shots on both passes. Herrera understandably treated this as a single driveby shooting. The very first sentence was: "[Defendant] participated in a gang-related shooting in which a young boy and a man were injured." (People v. Herrera, supra, 70 Cal.App.4th at p. 1460, italics added.) Even assuming the two passes could be regarded as separate shootings, both victims were injuredand thus, both attempted murders were committedin the first pass. In any event, this distinction seems to go to why the defendant could be separately punished for the two attempted murders,[9] not why he could be separately punished for gang participation in addition to the two attempted murders. And finally, the court's stated reasoning in Herrera had nothing to do with how many shootings there were or how many people were injured; indeed, it had nothing to do with the facts of the particular case at all. Thus, as we see it, Herrera simply cannot be reconciled with Vu.

C. People v. Tran.

The Fourth District, Division Three most recently confronted the application of section 654 to gang participation in People v. Tran (2009) 177 Cal.App.4th 138 [99 Cal.Rptr.3d 122], petition for review filed October 7, *725 2009.[10]Tran and Herrera share the same author. There, the defendant shot and killed an innocent bystander, thinking he was a member of a rival gang, the Oriental Play Boys. Immediately before the shooting, the defendant yelled, "`Hey, that's Play Boy . . . .'" (Tran, at pp. 143, 147; see also id. at p. 146.) As a result, he was convicted of murder and gang participation (along with other crimes). (Id. at p. 150.)
The court held that section 654 required the trial court to stay the gang participation term. It explained: "In People v. Herrera, supra, 70 Cal.App.4th 1456, this court applied the separate but simultaneous objective test to conclude that section 654 did not apply where a gang member went on a driveby shooting spree motivated by both a desire to promote the gang and `simply a desire to kill.' [Citation.]
"We stress: In the present case, unlike Herrera, the evidence affirmatively excludes even the possibility that Tran might have had separate, but simultaneous, motives. Tran exclaimed, `Hey, that's Play Boy . . . that's him, that's him, that's Play Boy,' when he shot [the victim]. The statement will admit of no other possibility but that . . . he did not have a generalized desire to kill, but the specific desire to kill a rival gang member, as evidenced by the use of the gang moniker.
"Given these facts, the case of People v. Vu, supra, 143 Cal.App.4th 1009, rather than Herrera, controls. In Vu, like here, but unlike Herrera, there was no evidence that the defendant's shooting of the bystander had a dual purpose of a simple `desire to kill' along with his desire to promote his gang. We therefore follow Vu and apply section 654 in this instance." (People v. Tran, supra, 177 Cal.App.4th at p. 163.)
Once again, this attempt to distinguish Herrera is unsatisfying. In Herrera, there was no evidence that the defendant had a "desire to kill" separate and apart from his desire to aid his gang. Indeed, in discussing another issue (whether there was sufficient evidence of premeditation and deliberation), the court relied on evidence that the two gangs were at war and that, shortly before the shooting, ". . . Herrera told his girlfriend his `home boys were after the guys,' an apparent reference to his gang's need to retaliate for the shooting at the West Myrtle hangout." (People v. Herrera, supra, 70 Cal.App.4th at p. 1463.) As evidence of intent and objective, this seems indistinguishable from a shout of, "Hey, that's Play Boy . . . ."
Moreover, the purported distinction subverts the standard of review. As we have mentioned, the substantial evidence standard of review applies. In other *726 words, multiple punishment is barred, unless there is substantial evidence that the defendant had multiple motives. (People v. Racy, supra, 148 Cal.App.4th at pp. 1336-1337.) Tran, however, held that multiple punishment is allowed, unless "the evidence affirmatively excludes even the possibility" that the defendant had multiple motives. (People v. Tran, supra, 177 Cal.App.4th at p. 163.) Thus, multiple punishment is apparently permissible, even in the absence of substantial evidence of multiple motives.

D. Our Resolution.

We have a number of problems with Herrera.
(6) First, Herrera's focus on the defendant's culpability was misleading. The Supreme Court has cautioned: "We have often said that the purpose of section 654 `is to insure that a defendant's punishment will be commensurate with his culpability.' [Citation.] The Neal test does not, however, so ensure. A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective. . . . A rapist should not be insulated from punishment for separate crimes such as kidnapping even if part of the same criminal venture." (People v. Latimer (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611], italics added.) Thus, while certainly we should not lose sight of the defendant's particular culpability, it cannot be determinative.
Second, the categorical reasoning of Herrera is not limited to gang participation. Rather, it would mean that every time a defendant is convicted of two crimes with different specific intent requirements, section 654 would not apply. But this is not the law. For example, in People v. Ridley (1965) 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124], the defendant was convicted of (among other things) robbery of victim Bennett and assault on Bennett with a deadly weapon with the intent to commit murder. (Id. at pp. 673, 677.) These crimes had different specific intent requirements: assault with the intent to commit murder required the intent to kill, whereas robbery required the intent to permanently deprive. (See People v. Burney (2009) 47 Cal.4th 203, 234 [97 Cal.Rptr.3d 348, 212 P.3d 639].) Nevertheless, the court held that section 654 barred punishment for both, because "it appears that the assault upon Bennett was the means of perpetrating the robbery and that both offenses were incident to one objective, robbery." (Ridley, at p. 678.)
(7) Third, the fact that the defendant had multiple objectives did not necessarily mean that he had multiple independent objectives. Section 654 bars multiple punishment even if the defendant has "`multiple criminal objectives,'" as long as those objectives were not "independent" but "merely *727 incidental to each other . . . ." (People v. Harrison, supra, 48 Cal.3d at p. 335.) The focus is not on the statutory elements of the crimes; rather, it is on the particular defendant's actual intent and objective. For example, in Latimer, the defendant was convicted of both kidnapping and rape. (People v. Latimer, supra, 5 Cal.4th at p. 1206.) The Supreme Court stated: "It could be argued that defendant had two intents: (1) to drive the victim against her will to an isolated area, and (2) to rape her. Cases applying the Neal rule, however, make clear that multiple punishment for both the rapes and the kidnapping is prohibited under the circumstances of this case. Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (Id. at p. 1216.) Likewise, in Herrera, from the court's statement of facts, it seems inescapable that the defendant's intent to kill was purely incidental to his intent to aid his gang.
Fourth, we question Herrera's statement that a defendant convicted of gang participation "does not need to have the intent to personally commit the particular felony (e.g., murder, robbery or assault) . . . ." (People v. Herrera, supra, 70 Cal.App.4th at p. 1467.) The court's point seems to have been that a defendant could commit gang participation without necessarily committing the underlying felony (and thus without having whatever intent the underlying felony may require).
(8) This is true, but irrelevant. For there to be a section 654 issue at all, the defendant must be found guilty of both gang participation and the underlying felony. And to be found guilty of gang participation, the defendant must either personally commit the underlying felony, or "willfully promote[], further[], or assist[]" the underlying felony. (Pen. Code, § 186.22, subd. (a), italics added.) Thus, if the defendant is also found guilty of the underlying offense, the defendant's intent and objective in committing both offenses must be the same.
Herrera used the example of a murder committed by other gang members when the defendant is merely an accessory after the fact, and thus neither a perpetrator nor an aider and abettor of the murder. This ignores the fact that, in such a case, the defendant cannot be convicted of murder but can be convicted of being an accessory. (Pen. Code, § 32.) In applying section 654, the question is not whether the defendant's intent and objective in committing gang participation was the same as the intent and objective of the gang in committing the murder, but whether it was the same as the defendant's intent and objective in committing the crime of being an accessory. Perforce it was.
(9) This is the point that we find dispositive. Here, the underlying robberies were the act that transformed mere gang membershipwhich, by *728 itself, is not a crimeinto the crime of gang participation. Accordingly, it makes no sense to say that defendant had a different intent and objective in committing the crime of gang participation than he did in committing the robberies. Gang participation merely requires that the defendant "willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of that gang . . . ." (Pen. Code, § 186.22, subd. (a).) It does not require that the defendant participated in the underlying felony with the intent to benefit the gang. (See People v. Leon (2008) 161 Cal.App.4th 149, 161-163 [73 Cal.Rptr.3d 786] [so construing gang enhancement, Pen. Code, § 186.22, subd. (b)]; People v. Morales (2003) 112 Cal.App.4th 1176, 1198 [5 Cal.Rptr.3d 615] [Fourth Dist., Div. Two] [same].)
In our view, the crucial point is that, here, as in Herrera, Vu, and Tran, defendant stands convicted of both (1) a crime that requires, as one of its elements, the intentional commission of an underlying offense, and (2) the underlying offense itself. Thus, the most analogous line of cases involves convictions for both felony murder and the underlying felony. It has long been held that section 654 bars multiple punishment under these circumstances. (People v. Meredith (1981) 29 Cal.3d 682, 695-696 [175 Cal.Rptr. 612, 631 P.2d 46]; People v. Boyd (1990) 222 Cal.App.3d 541, 575-576 [271 Cal.Rptr. 738] [Fourth Dist., Div. Two]; People v. Mulqueen (1970) 9 Cal.App.3d 532, 547 [88 Cal.Rptr. 235]; People v. Magee (1963) 217 Cal.App.2d 443, 470-472 [31 Cal.Rptr. 658].) The logic is that the underlying felony "is a statutorily defined element of the crime of felony murder" (Boyd, at p. 576), and thus the underlying felony is "the same act which made the killing first degree murder." (Id. at p. 575.)
Most significantly for our purposes, multiple punishment for both felony murder and the underlying felony is barred even when there is evidence that the killing was intentional and premeditated (e.g., People v. Mulqueen, supra, 9 Cal.App.3d 532, 542-543); thus, the trial court could have found that the defendant had the intent and objective of killing in connection with the murder, as well as the separate intent and objective of taking property in connection with an underlying robbery.
Of course, the situation is different if the jury was allowed to find the defendant guilty of first degree murder based on either a premeditation and deliberation theory or a felony murder theory; in that case, multiple punishment for the underlying felony is permitted, because the jury may have found an intent to kill separate and apart from the intent to commit the underlying felony. (People v. Osband (1996) 13 Cal.4th 622, 730-731 [55 Cal.Rptr.2d 26, 919 P.2d 640]; People v. Rogers (1981) 124 Cal.App.3d 1071, 1080-1081 *729 [177 Cal.Rptr. 747].) Here, however, the only way the jury could have found defendant guilty of gang participation was by finding that he committed the underlying robberies.[11]
Of course, it could be argued that, even if Herrera was wrong on its facts, this case presents a better argument for holding that section 654 does not apply. Herrera involved a classic gang driveby shooting, committed to retaliate against a rival gang. (People v. Herrera, supra, 70 Cal.App.4th at p. 1461.) Thus, the jury found gang enhancements to the attempted murders true. (Id. at p. 1462.) This should have made it hard to argue that the defendant's objective in committing the attempted murders was something other than his objective in participating in the gang.
Here, by contrast, there was evidence that defendant committed the robberies solely to help his family financially. His one accomplice was his cousin, who was not a gang member. Thus, the jury found the charged gang enhancements not true. On its face, then, the facts in this case more strongly support an argument that defendant had a different intent and objective in committing the robberies than in committing gang participation.
Nevertheless, in our view, the crucial fact is that the robberieseven if not gang motivatedwere necessary to satisfy an element of the gang participation charge. (See pt. II, ante.) Accordingly, almost by definition, defendant had to have the same intent and objective in committing all of these crimes.
We therefore conclude that, given the sentences for the robberies, defendant could not be punished separately for gang participation. In our disposition, we will stay this term.

X

THE ABSTRACT OF JUDGMENT[*]

XI

DISPOSITION
The judgment is modified, as follows: The 16-month term imposed on count 3 (gang participation) is hereby stayed. This stay shall become final if and when defendant has served the remainder of his sentence. The judgment *730 as thus modified is affirmed. The trial court is directed to prepare an amended abstract of judgment, including the corrections indicated in an unpublished portion of this opinion (pt. X), and to forward certified copies of it to the Department of Corrections and Rehabilitation. (Pen. Code, §§ 1213, 1216.)
Hollenhorst, Acting P.J., and McKinster, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IIA, B, D, III, IV, V, VI, VII, VIII and X.
[1] This crime is sometimes also called "street terrorism." (E.g., People v. Williams (2009) 170 Cal.App.4th 587, 625-626 [88 Cal.Rptr.3d 401] [Fourth Dist., Div. Two].)
[2] A gang expert admitted that, at least at the time of the robbery, Hernandez was not a gang member.
[3] "Corona" means "crown" in Spanish.
[4] Although these items were introduced as exhibits, the parties have not included them in the clerk's transcript, nor have they requested that these original exhibits be transmitted to this court. We therefore rely on the witnesses' descriptions of the exhibits in their testimony.
[*] See footnote, ante, page 709.
[*] See footnote, ante, page 709.
[8] The "intent and objective" test was first stated in Neal v. State of California (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].
[9] This was not even an issue in Herrera, as multiple punishment for the two attempted murders was clearly permissible under the multiple victim exception to section 654. (See generally People v. Oates (2004) 32 Cal.4th 1048, 1063-1066 [12 Cal.Rptr.3d 325, 88 P.3d 56].)
[10] In the interim, the court had decided People v. Garcia (2007) 153 Cal.App.4th 1499 [64 Cal.Rptr.3d 104]. Curiously, even though Garcia was written by the same author as Vu, it followed Herrera and its categorical approach without even mentioning Vu.
[11] The outcome also may be different if the multiple victim exception to section 654 applies. (See, e.g., People v. Young (1992) 11 Cal.App.4th 1299, 1311-1312 [15 Cal.Rptr.2d 30].)
[*] See footnote, ante, page 709.