Filed 12/5/24  P. v. Villareal CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MICHAEL VINCENT VILLAREAL, Defendant and Appellant. | F087065 (Super. Ct. No. MCR072402) OPINION |

## THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Brian Austin, Judge.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Peña, J. and Meehan, J.

**INTRODUCTION**

Defendant and appellant Michael Vincent Villareal contends on this appeal that the trial court erred by not staying his false imprisonment sentence under Penal Code section 654[1] and by imposing $960 in fines after finding he was unable to pay. We reject appellant's claim his sentence violates section 654 but agree that the sentencing minute order and abstract of judgment fail to reflect the court struck the $960 fine. We order the court to modify its records to reflect the court struck the $960 fine and issue a corrected minute order and abstract of judgment. In all other respects, we affirm the judgment.

**FACTUAL SUMMARY**

On November 7, 2021, appellant asked V.Q. to pick him up at a friend's house in Fresno where he had been staying for the weekend. Appellant had been in a dating relationship with V.Q. for two years. V.Q. drove to the friend's house and stayed while they watched a football game. Around 2:00 p.m., when the game ended, V.Q. and appellant decided to go to a casino in Madera County. V.Q. had two or three alcoholic beverages and appellant consumed at least three or four alcoholic beverages. After a few hours at the casino, they left to go home.

V.Q. was driving a rental car and appellant sat in the front passenger's seat. While they were driving, V.Q.'s phone alerted her to new text messages through the car's speakers. V.Q. was in a "group chat" so there were multiple chimes as people responded to texts. Appellant became "angry and aggressive," and started accusing V.Q. of cheating on him, saying vulgar things to her, and "calling [her] … every name in the book type of vulgar."

V.Q. explained to appellant why her phone was chiming, that she was not cheating on him, and that she loved him. Appellant did not listen to her and tried to grab her phone from her. They wrestled back and forth over the phone, and appellant bit V.Q.'s

---

[1]     Hereinafter, undesignated statutory references are to the Penal Code.

2.

bare right forearm, cutting her skin and causing bruising and swelling. V.Q. momentarily drove into oncoming traffic because of appellant, then yelled at appellant and told him to stop being physical with her. Appellant then pulled her hair "really hard several times" and punched her in the face.

V.Q. pulled over to try to stop appellant from hitting her and to show him the texts were not what he thought. When she pulled over, appellant continued to be aggressive with her by pulling her hair and yelling at her, while the two continued to wrestle over the phone. Appellant told V.Q. to take him home, and she got back on the freeway.

Once they were driving again, appellant resumed his abusive conduct, both verbal and physical. Appellant punched V.Q. in the face and nose with his closed fist as she drove. This caused her to lose focus; it caused bruising, soreness, and watery eyes. Meanwhile, V.Q. continued trying to calm appellant down.

V.Q. pulled to the side of the road again. She and appellant wrestled over her phone and 911 was inadvertently called. The 911 operator came on the phone asking them to state the emergency. This scared both appellant and V.Q. Appellant thought V.Q. was trying to call the police, but she was not.

As V.Q. continued to drive, she saw a gas station and decided to pull over so that she could show appellant that the texts she was receiving were " 'not what he th[ought].' " She parked in front of the store rather than at the pumps. She did not have her cell phone at this point. Appellant continued to yell at V.Q. and accuse her of cheating on him, and they continued to argue back and forth. The situation was very "intense," and appellant was still angry. Appellant laid on top of V.Q. with his upper body and held her down, "kind of chok[ing] [her]." V.Q. told appellant to stop and tried to push him off and grab her phone. V.Q. tried to unbuckle her seat belt and get out of the car, but appellant prevented her from doing so. During the struggle, the windshield wipers and horn of the car were unintentionally triggered.

3.

Alfred P., a clerk from the gas station, noticed appellant's aggressive posture and saw appellant's right hand move "really fast" toward V.Q. Then he saw the lights flash and heard the horn honking. Alfred observed appellant's left hand on V.Q.'s collarbone or throat area and his right hand on her throat. Alfred went to appellant's side of the car and told appellant to stop and to leave V.Q. alone. Appellant's door was locked, and appellant did not stop what he was doing or respond to Alfred. Alfred saw that V.Q. was in danger and twice tried to break appellant's window with his elbow but could not. Appellant did not react to Alfred's attempts to break the window, and Alfred became fearful for V.Q.'s life because he knew "she was absolutely in trouble." Alfred saw that V.Q.'s door was open but that she could not get out because appellant was leaning over her and holding her by the throat. Appellant was "absolutely on top [of her], his whole body was in the driver's seat, basically, over the top of [V.Q.]." Alfred went to V.Q.'s side of the car and opened her door further. V.Q. looked at Alfred "with terror in her face." Alfred wedged himself between V.Q. and appellant to protect her. Alfred then hit appellant, saying, " 'You don't put your hands on women. You don't hit women. You don't hit people [who are] smaller than you.' " Appellant then moved from the driver's seat back to the passenger's seat and V.Q. was able to get out of the car. Alfred continued to hit appellant until he was no longer a threat. V.Q. saw appellant "get[ting] beat up" so she went to appellant's door and opened it so appellant could get away. Appellant got out of the car and Alfred placed himself between appellant and V.Q. Appellant then fled the scene on foot. However, law enforcement was able to locate appellant.

**PROCEDURAL SUMMARY**

On February 24, 2022, appellant was charged in a second amended information with willful infliction of corporal injury resulting in a traumatic condition upon V.Q., with whom appellant had a dating relationship (§ 273.5, subd. (a); count 1) and false imprisonment by violence (§ 236; count 2). The information further alleged appellant sustained one strike prior in 2014 for a conviction under section 667, subdivisions (b)–(i),

4.

and alleged six aggravating factors under California Rules of Court, rule 4.421(a)(1), (a)(3), (a)(7), (b)(1), (b)(2), and (b)(3).[2]

The matter proceeded to a jury trial on June 22, 2022.  On July 6, 2022, a jury returned verdicts of guilty on count 1 and guilty on the lesser included offense to count 2, misdemeanor false imprisonment.  In a bifurcated proceeding, the jury found the prior strike allegation to be true.  It also found the aggravating factors under rule 4.421(a)(1), (a)(3), (b)(1), (b)(2), and (b)(3) to be true.

On October 16, 2023, the trial court sentenced appellant to one year (one-third the midterm of three years), doubled to two years due to the strike prior, on count 1, which was imposed consecutive to his sentence in Fresno County case No. F20902274.  The court imposed four days in jail with four days credit for time served as to count 2, which was ordered to be served concurrent to count 1.  The court found appellant had the inability to pay most of the recommended fines and fees.  It struck a total of $960 in fines and fees but imposed a $300 restitution fine, staying the execution of a $300 parole revocation fine.

Appellant filed a timely appeal on October 19, 2023.

## DISCUSSION

### The Trial Court Did Not Violate Section 654 by Imposing Sentence on Counts 1 and 2

#### Relevant Factual and Procedural Background

In his closing argument, the prosecutor argued that the jury could find appellant guilty of inflicting corporal injury on V.Q. based either on appellant's actions biting V.Q. or punching her in the face.  The prosecutor then argued that the false imprisonment took place in the gas station parking lot when appellant was on top of V.Q. and physically restraining her, so she was not free to leave.

---

[2]    Hereinafter, all rule references are to the California Rules of Court.

**Applicable Law and Standard of Review**

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." "It is well settled that section 654 protects against multiple punishment, not multiple conviction." (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*); *People v. McFarland* (1962) 58 Cal.2d 748, 762.) The statute "literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' " (*Harrison*, at p. 335.) However, "its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' " (*Ibid*.; accord, *People v. Beamon* (1973) 8 Cal.3d 625, 639, overruled on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896, 908.)

" ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." ' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 885, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104.) "It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] … [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Harrison*, *supra*, 48 Cal.3d at p. 335; *People v. Perez* (1979) 23 Cal.3d 545, 551–552; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 ["The focus of this rule is whether the defendant acted pursuant to a single intent and objective."].)

6.

"[M]ultiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm." (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

Whether multiple convictions were part of an indivisible transaction is a question of fact for the trial court, which we review de novo. (*People v. Avalos*, *supra*, 47 Cal.App.4th at p. 1583; accord, *People v. Williams* (1992) 9 Cal.App.4th 1465, 1473; see also *People v. Corpening* (2016) 2 Cal.5th 307, 312 [de novo review].) An appellate court will uphold the trial court's implied finding that a defendant harbored a separate intent and objective for each offense if substantial evidence supports such a finding. (*People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1310, disapproved on another ground in *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1137, fn. 8; accord, *Williams*, at p. 1473.) We consider the evidence in the light most favorable to the judgment and will presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 690, 730–731.) "This standard of review is exceedingly deferential." (*People v. Venegas* (2020) 44 Cal.App.5th 32, 38; see *People v. Brents* (2012) 53 Cal.4th 599, 618 ["A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence."].)

**Analysis**

On this record, there is substantial evidence from which the trial court could reasonably conclude appellant's course of criminal conduct was divisible and gave rise to more than one act within the meaning of section 654. (See *People v. Sanchez*, *supra*, 179 Cal.App.4th at p. 1310; *People v. Capistrano*, *supra*, 59 Cal.4th at p. 885.) The evidence supports that the corporal injury offense was based on a separate intent, conduct and objective than the false imprisonment offense. (See *Harrison*, *supra*, 48 Cal.3d at p. 335.) Appellant's actions of biting and hitting V.Q. were done while she was driving and appellant intended to inflict injury on her because he thought she was cheating and

7.

because he was trying to obtain her phone. After appellant bit and punched V.Q., she pulled over to the side of the road momentarily while she and appellant wrestled over the phone and 911 was inadvertently called. V.Q. pulled back onto the road, and then decided to stop at the gas station. The evidence supports that appellant's intent and objective were different at the gas station when V.Q. parked and no longer had her phone. Appellant was no longer trying to inflict injury on V.Q. for suspected cheating or trying to obtain her phone but was now trying to prevent her from leaving. Appellant restrained V.Q. by laying his upper body on her and putting his hand on her throat. V.Q. explained she tried to escape but was unable to. Alfred saw that V.Q.'s door was open, corroborating her testimony that she tried to get out of the car.

Additionally, there is substantial evidence from which the trial court could have reasonably concluded that appellant's crimes were not one transaction. (See *People v. Felix*, *supra*, 92 Cal.App.4th at p. 915 ["multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm"].) Appellant bit and punched V.Q. while she was driving on the road. After appellant bit and punched her, she pulled over on the side of the road the second time, drove on the road again, and then stopped at a gas station. It was not until V.Q. parked the car at the gas station that the false imprisonment occurred.

The facts here are more similar to *People v. Newman* (2015) 238 Cal.App.4th 103 than *People v. Williams* (2017) 7 Cal.App.5th 644 as appellant asserts. In *Williams*, robbers ordered people to the back room to assist them in conducting the robbery then ordered them to lie face down as needed. "The false imprisonments were part of an indivisible course of conduct with the objective of robbery of merchandise from the backs of the store." (*Williams*, at p. 695.) However, in *Newman*, "the false imprisonment charges were based on the robber's turning and pointing his gun at customers trying to leave the restaurant and yelling that no one should move, which constituted a separate criminal objective from the robbery of the restaurant cashier and justified separate

8.

punishment." (*Williams*, at p. 695; *Newman*, at pp. 106, 112–113.) Here, appellant did not restrain V.Q. in order to physically injure her by hitting or biting. Rather, after biting and hitting V.Q., she pulled into a gas station parking lot and appellant then restrained her in order to prevent her from leaving. Appellant concedes in his reply brief that he then "[t]ried to restrain her up until [Alfred] intervened."

Appellant misstates the facts when he claims the evidence shows the physical abuse was one continuous event that continued into the gas station. Appellant claims that the argument continued "until they reached a … gas station parking lot" and that "[d]uring the argument, V.Q. testified appellant bit her arm, pulled her hair, and momentarily restrained her so she could not leave the vehicle." However, V.Q.'s testimony was that appellant bit her, pulled her hair, and punched her in the face in the beginning of the altercation when she was driving. V.Q. further testified that after these events, she pulled over to the side of the road where 911 was inadvertently called, then continued back on the road, and then pulled into the gas station parking lot before appellant restrained her. The testimony was that at the gas station, appellant was angry and continued to yell at her and accuse her of cheating. However, there was no evidence that appellant hit V.Q. as she pulled into the gas station.

Therefore, viewing the evidence in the light most favorable to the judgment, substantial evidence supports the trial court's conclusion that the corporal injury and false imprisonment were separate offenses, and that section 654 was inapplicable. (See *People v. Osband*, *supra*, 13 Cal.4th at pp. 730–731.)

**The Record Fails to Reflect the Trial Court's Decision to Strike the $960 Fine**

The People agree with appellant that the minute order and abstract of judgment fail to reflect the trial court's decision to strike the $960 fine. We agree.

The probation report recommended the imposition of various fines and fees, including a $960 fine pursuant to section 273.5, subdivision (a), which consisted of: a

$200 base fine; a $340 section 1464/Government Code section 76000 state and local penalty assessment; a $40 section 1465.7 criminal surcharge; a $100 Government Code section 70372, subdivision (a) state court facilities fee; an $80 section 1465.8, subdivision (a) court operations assessment ($40 per count); a $100 Government Code sections 76104.6 and 76104.7 DNA penalty assessment; a $40 Government Code section 76000.5 "EMS" fee; and a $60 Government Code section 70373 criminal conviction assessment ($30 per count).

At the sentencing hearing, appellant's counsel asked the court to waive the $960 fine pursuant to section 273.5, subdivision (a) on the grounds that appellant did not have the ability to pay them due to the length of his prison sentence. The prosecutor had no objection to the request. The court found appellant lacked the ability to pay the fines and fees and indicated it would strike them. However, neither the amended minute order from the sentencing nor the abstract of judgment reflect that the court struck the fines and fees. Rather, they indicate that the $960 fines were imposed.

Where there is a discrepancy between the oral pronouncement of judgment and the minute order, it is the oral pronouncement of the sentence that constitutes the judgment. (*People v. Mesa* (1975) 14 Cal.3d 466, 471, superseded by statute on other grounds as explained in *People v. Turner* (1998) 67 Cal.App.4th 1258, 1268.) "[A] discrepancy between the judgment as orally pronounced and as entered in the minutes [or abstract of judgment] is presumably the result of clerical error." (*Mesa*, at p. 471.)

"[A] court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts." (*People v. Baker* (2021) 10 Cal.5th 1044, 1109; *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) "The power exists independently of statute and may be exercised in criminal as well as in civil cases." (*In re Candelario* (1970) 3 Cal.3d 702, 705.) Accordingly, we order the trial court to correct the sentencing minute order and abstract of judgment to reflect the true fact that the court struck the $960 fine based on a finding that appellant did not have the ability to pay.

**DISPOSITION**

We order the trial court to correct the sentencing minute order and abstract of judgment to reflect the court struck the $960 fine and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, we affirm the judgment.