[No. F050116. Fifth Dist. Apr. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN JOSEPH SALCIDO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[redacted]

COUNSEL

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Stan Cross, Assistant Attorneys General, Louis M. Vasquez and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, Acting P. J.**—Appellant John Joseph Salcido was convicted by a jury of multiple crimes, which include two charges that he actively participated in a criminal street gang in violation of Penal Code section 186.22, subdivision (a). Salcido only challenges these two convictions, alleging the jury was instructed improperly based on the trial judge's modifications to Judicial Council of California Criminal Jury Instructions

(2006) CALCRIM No. 1400. We reject his contentions and conclude that the modified instruction accurately states the law. In the unpublished portion of this opinion, we conclude that sufficient evidence supports his convictions of these two charges.

## PROCEDURAL HISTORY

A jury convicted Salcido of (1) possession of a dirk or dagger on April 3, 2005 (Pen. Code, § 12020, subd. (a)(4)[1] (count 1)); (2) possession of a billy club on April 3, 2005 (§ 12020, subd. (a)(1) (count 2)); (3) two counts of active participation in a criminal street gang, one on April 3, 2005, and the other on September 10, 2005 (§ 186.22, subd. (a) (counts 3 & 10)); (4) providing a false identity to a peace officer (§ 148.9, subd. (a) (count 4)); (5) possession of a stolen vehicle on September 10, 2005 (§ 496d, subd. (a) (count 5)); (6) carrying a concealed weapon in a vehicle on September 10, 2005 (§ 12025, subd. (a)(1) (count 7)); (7) carrying a loaded firearm in a vehicle on September 10, 2005 (§ 12031, subd. (a)(1) (count 8)); and (8) possession of brass knuckles on September 10, 2005 (§ 12020, subd. (a)(1) (count 9)). The jury also found true allegations as to counts 1, 2, 7, 8, and 9 that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The trial court sentenced Salcido to a total term of six years.

Salcido contends his convictions for active participation in a criminal street gang on counts 3 and 10 must be reversed because (1) the trial court failed to instruct the jury that they were required to find he committed or aided and abetted a separate felony in addition to an underlying gang-related felony, and the error is not harmless because the evidence was insufficient to support this finding; and (2) the evidence was insufficient to establish that he knew members of the criminal street gang he associated with had engaged in a pattern of criminal gang activity. We reject Salcido's contentions and affirm the judgment.

## FACTUAL HISTORY

*The prosecution's case*

*April 3, 2005, incident*

At 6:30 a.m. on April 3, 2005, Madera Police Officer Josh Chavez was on routine patrol when he decided to speak with two individuals, one of which was Salcido. After they agreed to speak with him, Salcido told the officer his

---

[1] All further statutory references are to the Penal Code.

name was Jonathan Sauceda, although he later admitted his real name was John Salcido. The other individual was Andres Espijo. Espijo told Chavez he was on probation, while Salcido told the officer he was carrying a bat for "protection." Chavez handcuffed Salcido and searched him. The officer found a fixed-blade knife concealed in Salcido's pants pocket and a bat hidden in his pant leg. Salcido mentioned he used to be a Norteño and had been having problems with "some guys."

*September 10, 2005, incident*

On August 26, 2005, a 2001 Chevrolet pickup truck Steve Tolmachoff owned was left at a body shop in Madera for repairs. By September 6, repairs on the truck had been completed, although the truck had not yet been returned to its owner. When the body shop's owner opened the business on September 6, he realized his shop had been broken into and the truck taken. The owner was not aware of anyone from the body shop placing a gun inside the truck, and Tolmachoff did not leave a handgun in the truck when he brought it in for repairs.

On September 10, 2005, Madera Police Sergeant Johnny Smith saw a Chevrolet pickup truck breaking traction. The truck pulled into a driveway, which Smith suspected was an attempt to evade him. Smith drove up to the vehicle and noticed the tailgate was lowered, which he said was a common practice with stolen vehicles to conceal the license plate. The driver got out of the vehicle and started to walk away with a female, who had gotten out on the passenger side. When Smith told the driver to come speak to him, the driver complied. The driver, whom Smith identified at trial as Salcido, said his name was John Sauceda. Smith told the female passenger to raise the tailgate. After Smith obtained the license plate number, he learned the truck belonged to Tolmachoff.

Salcido told Sergeant Smith a friend who lived at a motel in Madera had lent him the truck just 30 minutes before, giving the friend's name and description. Smith later went to the motel, but no one was there matching the friend's name or description. Salcido told the officer he was a former Norteño gang member with the Barrio West Side.

Madera Police Officer Daniel Foss responded to Smith's call for assistance in the detention of the pickup truck. Foss inventoried the truck and found a loaded handgun between the driver's seat and the center console, readily accessible to the driver. He also located a set of brass knuckles in Salcido's pants pocket.

*Appellant's gang affiliation*

Officer Jason Dilbeck, Madera County Police Department's gang liaison officer, testified as an expert on criminal activity by gangs and about his familiarity with the local Norteño criminal street gang. Dilbeck stated there were approximately 1,500 Norteño gang members in Madera. He indicated that Norteños identify with signs and symbols such as the color red, the number 14, four dots, "Huelga birds" and the north star. Dilbeck explained that to instill respect or fear, gang members commit violent crimes, intimidate witnesses, wear colors, hang out in large groups, and carry weapons. The primary activities of the Norteño gang members include narcotic sales, burglary, possession of stolen property and vehicles, and vehicle burglaries. They also participate in assaults with deadly weapons, shooting at inhabited dwellings, and some homicides. There are different sets of the Norteño street gang, one of which is the Barrio West Side. There are also varying levels of gang participation, ranging from peripheral members, who may wear colors and associate with gang members, to gang members, to "shot callers" who direct the criminal activity.

In Officer Dilbeck's opinion, Salcido was a member of the Norteño criminal street gang. Dilbeck based this opinion on previous contacts Salcido had with the Madera police and sheriff's departments and the Department of Corrections. These contacts, which took place from January 18, 2001, to September 10, 2005, showed that Salcido had participated in gang-related crimes and had a gang moniker and gang-related tattoos. Salcido dressed in gang attire, had been identified by reliable sources or rival gang members as a gang member, and was documented as associating with known gang members. In August 2004, March 2005, and September 2005, Salcido admitted to Barrio West Side gang membership.

Dilbeck believed Salcido's possession of the bat and knife on April 3, 2005, was gang related, as the person he was with was an admitted gang member and Salcido had gang-related tattoos. In addition, Salcido said he had been a West Side gang member since he was 17 years old, and the bat Salcido was carrying was red, the Norteño color. Dilbeck had confiscated bats from gang members in the past and knew gang members used bats to commit assaults.

Officer Dilbeck also believed Salcido exhibited objective signs of gang membership during the September 10 incident. He explained that it is common for gang members to claim, as Salcido did, that they used to be gang members when they are arrested for what may be seen as a gang-related crime. Doing so allows them to state their allegiance to the gang and simultaneously deny active participation so the crime will not be charged as a

gang-related crime. Dilbeck also believed that the fact Salcido was carrying a gun and was in a stolen vehicle with a known Norteño gang member also showed the crime was gang related. He opined that it is common for gang members to steal cars or be in possession of stolen cars and to possess stolen or unregistered guns. If Salcido were no longer affiliated with the gang, the gang would not allow him to wear gang attire and associate with gang members.

Dilbeck also opined that Salcido was an active participant in the gang since he continued to hang out with known gang members, wear gang attire, possess items considered to be gang paraphernalia, and commit crimes with other gang members. Dilbeck went to Salcido's house in November 2005 and entered Salcido's room, which he shared with his brother. There, Dilbeck saw Salcido's moniker and gang-related graffiti on the walls, a red baseball cap with markings on it that signified the Madera Norteños, and another hat with gang-related markings on it.

In Officer Dilbeck's opinion, Salcido committed the alleged crimes for the benefit of the Norteño gang because each time he was with another Norteño member he was carrying weapons, which engenders fear. Dilbeck testified that one of Salcido's fellow Norteño gang members, Jesse Candia, Jr., who also claimed to belong to the Barrio West Side, was convicted in 2004 for a 2002 charge of possessing methamphetamine for sale. Another Norteño gang member, who also claimed to belong to the Barrio West Side, Johnny Arrellano, committed a number of offenses in 2002, including transportation of methamphetamine, possession of a loaded firearm, possession of methamphetamine for sale, participation in a criminal street gang, and child endangerment. Given hypothetical facts like those in Salcido's cases, Dilbeck opined that the resulting crimes were committed for the benefit of a criminal street gang.

*Defense*

Correctional Corporal Hermenio Sauceda, with the Madera County Department of Corrections, works in the classifications gang investigation unit. According to Corporal Sauceda, when Salcido was placed in the county jail in September 2005, Salcido classified himself as a Norteño dropout gang member. Salcido initially requested that he be housed in the maximum-security administrative segregation unit where he remained for one month. After that, he asked to be placed with the other dropouts. When Salcido was in custody for four days in April 2005, he did not classify himself as a dropout. At that time, he was placed in the general population because the jail had no information that Salcido was a Norteño gang member.

Salcido testified that he carried weapons for his own safety ever since he and his father were the victims of a drive-by shooting by Southerners in October 2003. After the shooting, Salcido claimed he had "bad situations with the Northerners" because his "homies" did not help him or his father when they were shot. Salcido expected them to help him retaliate, but they did not. About a month after the shooting, some of the people in his neighborhood with whom he grew up and were Norteños called him names because he no longer associated with them. Salcido claimed that, after that, the only gang member he spent time with was his cousin, Andres Espijo. He did so until they had a falling out because of what happened with the other "homies," and Espijo's girlfriend, who was in the truck with him. In January 2005, he was in contact with his cousin's boyfriend, who Salcido denied was a Barrio West Side member, and in July 2004, he was caught associating with a childhood friend who was a Barrio West Side member. Salcido testified he was no longer part of a gang.

Salcido said he wore red clothes after the shooting because he had nowhere to live and was borrowing clothing. In July 2005, he still wore red shoes. Salcido claimed he told jail personnel in April 2005 he was a Norteño even though he was a dropout because he did not know they had a dropout tank in the jail.

Salcido's father testified that he did not believe his son was a gang member because he never saw him commit any type of gang activity, and he was always home and never went anywhere. When he and Salcido were shot in their front yard in 2003, he believed the shooters were after his other son.

## *DISCUSSION*

### I. *Jury instruction on section 186.22, subdivision (a)*

■ Salcido contends that his convictions on counts 3 and 10 must be reversed because the trial court misinstructed the jury on the elements of street terrorism, also known as active gang participation, as defined in section 186.22, subdivision (a).[2] "Subdivision (a) create[s] a substantive offense for active participation in a criminal street gang. . . ." (*People v. Ngoun* (2001) 88 Cal.App.4th 432, 435 [105 Cal.Rptr.2d 837] (*Ngoun*).) Our Supreme Court has identified the elements of section 186.22, subdivision (a), as: " 'actively

---

[2] Section 186.22, subdivision (a), provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

participat[ing] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity' and 'willfully promot[ing], further[ing], or assist[ing] in any felonious criminal conduct by members of that gang.' " (*People v. Robles* (2000) 23 Cal.4th 1106, 1115 [99 Cal.Rptr.2d 120, 5 P.3d 176].) The standard jury instruction for the crime of active participation in a criminal street gang is contained in CALCRIM No. 1400.[3]

Here, in a brief discussion of jury instructions before closing arguments, defense counsel informed the court he objected to the modified version of CALCRIM No. 1400 that the court intended to read to the jury. Defense counsel complained that the court's proposed instruction identified the four felonies Salcido was charged with as the felonious criminal conduct and

---

[3] The version of CALCRIM No. 1400 in effect at the time of Salcido's trial provided: "The defendant is charged [in Count ___] with participating in a criminal street gang. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant actively participated in a criminal street gang; [¶] 2. When the defendant participated in the gang, (he/she) knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] AND [¶] 3. The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang.

"*Active participation* means involvement with a criminal street gang in a way that is more than passive or in name only. [¶] [The People do not have to prove that the defendant devoted all or a substantial part of (his/her) time or efforts to the gang, or that (he/she) was an actual member of the gang.]

"<*If criminal street gang has already been defined*> [¶] [A *criminal street gang* is defined in another instruction to which you should refer.]

"<*If criminal street gang has not already been defined in another instruction*> [¶] [A *criminal street gang* is any ongoing organization, association, or group of three or more persons, whether formal or informal: [¶] 1. That has a common name or common identifying sign or symbol; [¶] 2. That has, as one or more of its primary activities, the commission of ____ <*insert one or more crimes listed in Pen. Code, § 186.22(e)(1)–(25)*> [¶] AND [¶] 3. Whose members, whether acting alone or together, engage in or have engaged in a pattern of criminal gang activity.

"In order to qualify as a *primary* activity, the crime must be one of the group's chief or principal activities rather than an occasional act committed by one or more persons who happen to be members of the group.

"A *pattern of criminal gang activity*, as used here, means: [¶] 1. [The] (commission of [,]/[or] attempted commission of[,]/[or] conspiracy to commit[,]/[or] solicitation to commit[,]/[or] conviction of[,]/[or] (Having/having) a juvenile petition sustained for commission of) [any combination of two or more of the following crimes]: _____ <*insert one or more crimes listed in Pen. Code, § 186.22(e)(1)–(25)*> [¶] 2. At least one of those crimes was committed after September 26, 1988; [¶] 3. The most recent crime occurred within three years of one of the earlier crimes; [¶] AND [¶] 4. The crimes were committed on separate occasions or were personally committed by two or more persons.]

"The People need not prove that every perpetrator involved in the pattern of criminal gang activity, if any, was a member of the alleged criminal street gang at the time when such activity was taking place. [¶] [The crimes, if any, that establish a pattern of criminal gang activity, need not be gang-related.] [¶] [If you find the defendant guilty of a crime in this case, you may consider that crime in deciding whether one of the group's primary activities was commission of that crime and whether a pattern of criminal gang activity has been proved.] [¶] [You may

asked "the wording to be of a more general nature so it's known that other felonies could be considered for this rather than just the four mentioned." The court declined the request, explaining that the People's theory of the case was that Salcido was the one who committed the felonious crimes, which were the four crimes charged, and the jury could not consider any other felonious conduct. The court pointed out that the parties had discussed CALCRIM No. 1400, extensively, and defense counsel had a "general objection" to the instruction it intended to give, which "synthesized" CALCRIM No. 1400 and CALJIC No. 6.50, because it differed from the one CALCRIM provided. Defense counsel had no further objections to the instruction.

In instructing the jury on participation in a criminal street gang, the court modified the third element in the first part of CALCRIM No. 1400 by adding the italicized language: "To prove that the defendant is guilty of this crime[,] the People must prove that, one, the defendant actively participated in a criminal street gang. Two, when the defendant participated in the gang[,] he

---

not find that there was a pattern of criminal gang activity unless all of you agree that two or more crimes that satisfy these requirements were committed, but you do not have to all agree on which crimes were committed.]

"As the term is used here, a *willful act* is one done willingly or on purpose.

"*Felonious criminal conduct* means committing or attempting to commit [any of] the following crime[s]: ____ *<insert felony or felonies by gang members that the defendant is alleged to have furthered, assisted, or promoted>*.

"To decide whether a member of the gang [or the defendant] committed ____ *<insert felony or felonies listed immediately above and crimes from Pen. Code, § 186.22(e)(1)–(25) inserted in definition of pattern of criminal gang activity>*, please refer to the separate instructions that I (will give/have given) you on (that/those) crime[s].

"To prove that the defendant willfully assisted, furthered, or promoted a crime, the People must prove that: [¶] 1. A member of the gang committed the crime; [¶] 2. The defendant knew that the gang member intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the gang member in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the commission of the crime.

"Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] [If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor.]

"[A person who aids and abets a crime is not guilty of that crime if he or she withdraws before the crime is committed. To withdraw, a person must do two things: [¶] 1. He or she must notify everyone else he or she knows is involved in the commission of the crime that he or she is no longer participating. The notification must be made early enough to prevent the commission of the crime; [¶] AND [¶] 2. He or she must do everything reasonably within his or her power to prevent the crime being committed. He or she does not have to actually prevent the crime. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw. If the People have not met this burden, you may not find the defendant guilty under an aiding and abetting theory.]" (CALCRIM No. 1400.)

knew that members of the gang engaged in or have engaged in a pattern of criminal gang activity. [¶] And, three, the defendant willfully promoted, furthered or assisted *by either directly and actively committing a felony offense or aiding and abetting* felonious criminal conduct by members of that gang." (Italics added.)

The court's instruction ended with the definition of felonious criminal conduct: "Felonious criminal conduct means committing or attempting to commit any of the following crimes: Illegal possession of a weapon, receiving stolen property, carrying a loaded firearm in a vehicle or carrying a concealed firearm in a vehicle." As relevant here, the instruction omitted the following portion of CALCRIM No. 1400: "To prove that the defendant willfully assisted, furthered, or promoted a crime, the People must prove that: [¶] 1. A member of the gang committed the crime; [¶] 2. The defendant knew that the gang member intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the gang member in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the commission of the crime."

Salcido takes the position that the court erred in two respects when it modified CALCRIM No. 1400. First, Salcido contends that the trial court should have instructed the jury that a person cannot be guilty of street terrorism unless he or she aids and abets "a separate felony offense" *in addition to* an underlying gang-related felony offense. Salcido argues that the court erred when it omitted from the instruction the language from CALCRIM No. 1400, which states what the prosecutor must show to prove that the defendant willfully assisted, furthered, or promoted a crime. Second, he contends that the separate felony offense must be one of the offenses listed in section 186.22, subdivision (e), which defines a " 'pattern of criminal gang activity' " and lists the offenses upon which this finding may be based.

■ We begin with Salcido's reliance on the CALCRIM User Guide and CALCRIM No. 1400 itself as authority for his claims of error. Published jury instructions, however, are "not themselves the law, and are not authority to establish legal propositions or precedent. . . . At most, when they are accurate, . . . they restate the law." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 [104 Cal.Rptr.2d 582, 18 P.3d 11].) Consequently, we move on to Salcido's other rationale in support of his argument.

██ More powerfully, Salcido relies on an often misinterpreted statement made by our Supreme Court in *People v. Castenada* (2000) 23 Cal.4th 743, 750 [97 Cal.Rptr.2d 906, 3 P.3d 278] (*Castenada*): "[A] person liable under section 186.22(a) must aid and abet a separate felony offense committed by gang members." On its own, the statement arguably supports Salcido's position. When read in context, however, it is part of the Supreme Court's explanation that section 186.22, subdivision (a), avoids punishing mere association with a disfavored organization and satisfies the due process requirement of personal guilt (see *Scales v. United States* (1961) 367 U.S. 203 [6 L.Ed.2d 782, 81 S.Ct. 1469]) by criminalizing gang membership only where the defendant bears individual culpability for "a separate felony offense committed by gang members." (*Castenada, supra,* 23 Cal.4th at pp. 749–751.) In other words, because section 186.22, subdivision (a), "limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity" (*Castenada, supra,* at p. 749), anyone who violates the statute must be more than a passive gang associate. He or she "'would also . . . be criminally liable as an aider and abettor to [the] specific crime' committed by the gang's members . . . ." (*Ibid.*) *Castenada* discussed the crime of gang participation in terms of aiding and abetting. We clarified in *Ngoun* that section 186.22, subdivision (a), also applies to a direct perpetrator's gang-related criminal conduct. (*Ngoun, supra,* 88 Cal.App.4th at p. 436.) In *Ngoun,* the appellant argued that there was insufficient evidence to support his conviction under section 186.22, subdivision (a), because there was no proof he aided or abetted a felonious act actually committed by another gang member. It was undisputed that if the evidence proved appellant engaged in any criminal conduct, it was only as the perpetrator of the murder and assaults with which he was charged. (*Ngoun, supra,* at pp. 434–435.)

We wrote that "[u]nder the language of subdivision (a), liability attaches to a gang member who 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' (§ 186.22, subd. (a).)" (*Ngoun, supra,* 88 Cal.App.4th at p. 436.) After reviewing dictionary definitions of "promote," "further," and "assist," we concluded: "The literal meanings of these critical words squares with the expressed purposes of the lawmakers. An active gang member who directly perpetrates a gang-related offense 'contributes' to the accomplishment of the offense no less than does an active gang member who aids and abets or who is otherwise connected to such conduct. Faced with the words the legislators chose, we cannot rationally ascribe to them the intention to deter criminal gang activity by the palpably

irrational means of excluding the more culpable and including the less culpable participant in such activity." (*Ibid.*) In *Ngoun,* we rejected Salcido's contention that some separate felony is required in addition to the underlying felony committed to further, promote, or assist the gang. (See *id.* at pp. 436–437 [citing cases where "a defendant [was] convicted both as a perpetrator of a substantive felony and as a gang member under section 186.22, subdivision (a) based upon the same felony"].)

Salcido attempts to distinguish *Ngoun* on the ground that there, other gang members actually were present when the appellant committed the murder and assaults underlying his section 186.22, subdivision (a), conviction. He contends *Ngoun* stands for the proposition that a "[principal] who commits a crime jointly with other gang members is equally liable under section 186.22, subdivision (a)." Salcido asserts that subdivision (a) imposes liability on perpetrators only if they commit the crime in concert with other gang members. In *Ngoun,* however, we placed no limitation on our holding. To the contrary, we concluded that the subdivision "applies to the perpetrator of felonious gang-related criminal conduct as well as to the aider and abettor." (*Ngoun, supra,* 88 Cal.App.4th at p. 436.) Even though in *Ngoun* other gang members were present when the crimes were committed, it is uncertain whether they participated in the crimes. (*Id.* at p. 437.) Here, Salcido was accompanied by known gang members on both occasions, although there was no evidence they participated in Salcido's crimes. In each case, however, "[t]he evidence supports a reasonable inference that the [crimes] were intended by appellant to promote, further and assist the gang in its primary activities—the commission of criminal acts and the maintenance of gang respect." (*Ibid.*)

Salcido also attempts to distinguish *Ngoun,* arguing that the offenses the defendant in *Ngoun* committed were predicate offenses listed in section 186.22, subdivision (e), while the offenses he committed were not predicate offenses at that time. We observe that, in 2006, the list of predicate offenses was expanded to include two of the offenses Salcido was convicted of in this case, including carrying a concealed firearm in violation of section 12025 (§ 186.22, subd. (e)(32)) and carrying a loaded firearm in violation of section 12031 (§ 186.22, subd. (e)(33)). (Stats. 2006, ch. 596, § 1.)

■ Subdivision (e) provides that a gang engages in a " 'pattern of criminal gang activity' " when its members participate in "two or more" specified criminal offenses (predicate offenses) that are committed within a certain timeframe and "on separate occasions, or by two or more persons."

(§ 186.22, subd. (e); see also *People v. Zermeno* (1999) 21 Cal.4th 927, 930 [89 Cal.Rptr.2d 863, 986 P.2d 196].) This language ties into Salcido's contention that not only must he have aided and abetted another gang member in a separate felony, but the separate felony must be one of the predicate offenses listed in section 186.22, subdivision (e). Salcido further asserts that the definition of "felonious criminal conduct" the trial court gave here was erroneous because none of the crimes listed were predicate offenses.

Section 186.22, subdivision (a), however, does not contain any requirement that the "felonious criminal conduct" the defendant "willfully promotes, furthers, or assists" consist of the predicate offenses listed in section 186.22, subdivision (e), which, pursuant to that subdivision, apply only to determine whether there was a " 'pattern of criminal gang activity . . . .' " While the crimes the defendants in *Castenada* and *Ngoun* committed also may have qualified as predicate offenses, neither case held that this was a requirement of the statute. Obviously, cases do not stand for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].)

Here, if the evidence proved any criminal conduct by Salcido, it was only as the perpetrator of the crimes establishing the felonious criminal conduct with which he was charged. This conduct included illegal possession of a weapon, receiving stolen property, carrying a loaded firearm in a vehicle, or carrying a concealed firearm in a vehicle. Faced with CALCRIM No. 1400 which defines when a defendant willfully assists, furthers, or promotes a crime only in terms of whether the defendant aided and abetted another gang member in the commission of a crime, the trial court appropriately omitted that portion of the instruction. Instead, it told the jury it must find that Salcido "willfully promoted, furthered or assisted *by either directly and actively committing a felony offense or aiding and abetting* felonious criminal conduct by members of that gang." (Italics added.) As a result, the court correctly instructed the jury that Salcido could be convicted of the crime if he was a direct perpetrator of the felonious criminal conduct. Although the court never defined the terms "aiding and abetting," this did not impact Salcido since the jury could not have found Salcido guilty based on aider-and-abettor status.

Recognizing this issue, in *Ngoun*, we commented that the "real difficulty" was in CALJIC No. 6.50, which at the time stated that one of the elements of the crime was " '[t]hat person *aided and abetted* [a] member[s] of that gang in committing the crime[s] of ___.' (Italics added.)" (*Ngoun, supra,* 88 Cal.App.4th at p. 435, fn. 20.) We surmised that the instruction was founded on the statement in *Castenada* that "a person liable under section 186.22(a) must aid and abet a separate felony offense committed by gang members" (*Castenada, supra,* 23 Cal.4th at p. 750), but concluded that *Castenada* did

not stand for the proposition that only an aider and abettor is subject to liability under section 186.22, subdivision (a). In doing so, we concluded "it would be a misconstruction of the statutory language and a perversion of the legislative intent to read the subdivision in such a narrow manner." (*Ngoun, supra*, 88 Cal.App.4th at p. 437.) As a result, we suggested that the CALJIC committee review this instruction with an eye toward revising it, which the committee apparently did. CALJIC No. 6.50 was changed to clarify that direct participation in gang-related crime, as well as aiding and abetting, falls within the scope of section 186.22, subdivision (a). The element was revised to read: "That person either directly and actively committed or aided and abetted [another] [other] member[s] of that gang in committing the crime[s] of ____." (CALJIC No. 6.50 (Jan. 2005 ed.) p. 236.)

■ Similarly, the problem here lies in the CALCRIM instruction, which defines the elements of "willfully assist[ing], further[ing], or promot[ing] a crime" only in terms of defendant acting as an aider and abettor. However, as we concluded in *Ngoun*, section 186.22, subdivision (a), cannot be read so narrowly and includes perpetrators of felonious gang-related criminal conduct. (*Ngoun, supra*, 88 Cal.App.4th at p. 437.) We suggest the CALCRIM committee review and consider revising this instruction.

■ In sum, requiring an additional "separate" felony would defeat the Legislature's purpose of making gang participation itself a substantive crime, which is demonstrated by the commission of, or aiding and abetting, even a single instance of gang-related felonious conduct. Further, there is no authority to support the contention that felonious criminal conduct must be a predicate crime listed in section 186.22, subdivision (e). We therefore reject Salcido's argument that the instruction was erroneous, as well as his contention that the evidence was insufficient to support a finding that he aided and abetted another gang member in the commission of predicate felony offenses.

II. *Sufficiency of the evidence**

_____

*See footnote, *ante*, page 356.

## *DISPOSITION*

The judgment is affirmed.

Levy, J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 2007, S152686.