Filed 6/27/13  P. v. Guerrero CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047068 |
| v. | (Super. Ct. No. 10CF3295) |
| JOHNNY ALBERT GUERRERO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge. Affirmed in part and reversed in part.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted Johnny Albert Guerrero of possession for sale of a controlled substance (Health & Saf. Code, § 11378), transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a), (the "(a) count"); all further undesignated statutory references are to this code), and possession of methamphetamine. (Health & Saf. Code § 11377, subd. (a).) Guerrero challenges the sufficiency of the evidence to establish he actively participated in a criminal street gang. He also argues, and the Attorney General concedes, his conviction for simple possession of methamphetamine must be reversed because it was a lesser included offense of his other drug convictions. As we explain, Guerrero does not succeed in his challenge to the (a) count, and we therefore affirm the judgment in part, and reverse only with respect to the simple methamphetamine charge.

I

FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, undercover narcotics enforcement sheriff's deputies were conducting surveillance of the Allure Apartments on Chapman Avenue in Orange because they suspected an important drug cartel member resided there. Guerrero and Eberardo Diaz pulled into a parking structure adjoining the apartment complex, parked their car, and entered the apartment building, where they remained for 30 minutes to an hour. Diaz had been driving the vehicle, and he entered and exited the apartment building carrying a black bag.

The undercover officers followed Diaz and Guerrero after they left the apartment complex and drove to a local fast food restaurant known for drug transactions. Diaz and Guerrero met a man and a woman in the parking lot and the four entered the

2

restaurant together. A City of Orange police officer, unaware of the undercover surveillance, spotted Diaz's vehicle and ran a check on the license plate, revealing prior narcotics convictions. The officer followed the duo when they left the restaurant and attempted to stop Diaz for illegally tinted taillights and windows.

Diaz, however, sped off, leading the police on a high-speed chase. The undercover officers monitored the pursuit and, while following at a distance, retrieved a black bag they found in the middle of the road. The bag matched the one Diaz had taken into the apartment building.

Meanwhile, the officers giving chase managed to pull over and arrest Diaz and Guerrero. The arresting officers found a powdery residue in the vehicle's center console and a glass methamphetamine pipe covered by a napkin on the passenger's side floorboard, where Guerrero had been sitting. The officers found Diaz in possession of more than $2,600 in cash, and Guerrero had divided $640 among three of his pants pockets. Guerrero's brother-in-law later testified he gave Guerrero $700 for living expenses. The black bag that had been discarded in the street contained a loaded 9-millimeter handgun, approximately $31,000 worth of methamphetamine, and a digital scale. The methamphetamine was packaged in 13 separate baggies.

Orange County Sheriff's Deputy Roland Andrade testified as a gang expert for the prosecution. He explained it is important for narcotics-dealing gangs to claim certain territory as their domain. This allows the gang to generate revenue from selling drugs without interference from competitors, and to collect a "tax" from unaffiliated drug dealers who wish to ply their trade in the gang's territory. Narcotics deals conducted by the gang's members are often a group effort in which a member enlists a fellow gang member to serve as "backup" for protection and to ensure "nothing goes wrong."

Andrade identified Southside as a Santa Ana gang with recognized identifying signs and symbols, including the color maroon, and a pattern of committing certain crimes. In December 2010, Southside's primary activities consisted of narcotics sales and firearm possession. Andrade concluded Guerrero was an active Southside gang member based on his past admissions to police officers that he was a Southside member and his role in the present case as backup for "another Southside criminal street gang member," thereby also implicitly identifying Diaz as a Southside member. Andrade explained that veteran gang members like the 40-year-old Guerrero were entrusted to carry out drug deals involving larger quantities of contraband as in this case, rather than "an entry level gang member who is . . . not typically trusted with that amount of narcotics, firearms, stuff of that nature."

Andrade based his conclusion Diaz was a Southside member on his repeated contact with Southside members, his prior convictions for selling drugs in Southside's territory, and his guilty plea "in this particular case to actively participating in the South[side] criminal street gang during the course of this incident." Andrade acknowledged that Diaz's previous offenses had been "regular narcotics conviction[s]" without any gang involvement despite the large sums of drugs and cash involved, but Andrade concluded that in this case "[h]is conduct had progressed to the active participant level."

Guerrero testified Diaz was not a Southside member. Paroled from prison a month earlier, Guerrero explained he spent time with Diaz in part because his parole conditions forbade him from associating with Southside members. He had known Diaz a long time, and he relied on him for transportation. The night of the incident, he and Diaz

4

dropped Diaz's wife off at home after the three had dinner together, and the two men planned to pick up Guerrero's female friend from a party.

But Diaz stopped at the Allure Apartments to visit a woman with whom he was having an affair. Guerrero claimed he did not know what was in the black bag Diaz carried into and out of the apartment building, nor did he know Diaz was selling drugs. Guerrero explained he wanted to remain in the car while at the Allure Apartments, but needed to use the restroom inside. Guerrero also provided an innocent explanation for their visit to the fast food restaurant known for drug deals, because he "wanted to get some curly fries." Guerrero urged Diaz to use the drive-through because he spotted the officer in the parking lot, which alarmed Guerrero because had been drinking alcohol in violation of his parole conditions. Diaz, however, rejected his suggestion and they entered the restaurant, but Guerrero did not know or talk to the girl Diaz met there.

The jury convicted Guerrero as noted above, the trial court in a bifurcated proceeding found allegations of several prison priors and a prior serious felony conviction and strike to be true, and the court sentenced Guerrero to a nine-year term. He now appeals.

II

DISCUSSION

A.    *The Evidence Supports Guerrero's Conviction for Active Gang Participation*

Guerrero challenges the sufficiency of the evidence to support his conviction for the substantive gang crime defined in section 186.22, subdivision (a). To be convicted of this offense, a person must (1) actively participate in a criminal street gang; (2) knowing that its members engage in or have engaged in a pattern of criminal

5

gang activity; (3) and "willfully promote[], further[], or assist[] in any felonious criminal conduct by members of that gang." (*Ibid.*) Guerrero only disputes the third element.

The Attorney General relies on case law that a gang member may be convicted of active gang participation based on his or her own actions in committing the underlying felony, since he or she necessarily promotes, furthers, or assists in that felonious conduct. (See *People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1308-1309; *People v. Salcido* (2007) 149 Cal.App.4th 356, 368; *People v. Ngoun* (2001) 88 Cal.App.4th 432, 437.) During the pendency of this case, however, the California Supreme Court decided *People v. Rodriguez* (2012) 55 Cal.4th 1125, which disapproved this line of authority. In *Rodriguez*, the court concluded that "to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct." (*Id.* at p. 1132.) Thus, the court held that "section 186.22(a) requires that felonious criminal conduct be committed by at least *two* gang members, one of whom can include the defendant if he is a gang member." (*Ibid.*, italics added.)

Guerrero asserts the evidence fails to establish Diaz was a gang member, and therefore Guerrero's gang conviction cannot stand. True, Diaz's guilty plea to the (a) count in this case does not establish *he* was a gang member because the Legislature has expressly specified gang membership is not an element of the offense. (§ 186.22, subd. (i) ["nor is it necessary to prove that the person is a member of the criminal street gang"].)

Guerrero also argues that Diaz's plea admission to assisting a gang member (Guerrero) in the present offense shows only that Diaz continued to associate with the Southside gang, as he had in the past, but association is not membership.

6

Guerrero cites numerous examples of this truism, including defense attorney and gang experts who cannot be deemed members of a gang simply because they associate with gang members.  He speculates that Diaz similarly "could also have [had] a professional relationship as a drug supplier for gang members from one or more gangs, but not be a member of any gang."

The distinction here, however, is that Andrade explained that when gang members engage in drug deals, especially in large quantities, they often have "backup" in the form of *fellow* gang members.  Consequently, the jury reasonably could conclude Guerrero served in this role for Diaz, and thereby infer Diaz was a fellow Southside member, which explained Guerrero's presence accompanying him while they had more than $30,000 in methamphetamine to distribute.

Andrade acknowledged that gangs may allow nonmembers to engage in sales for a "taxed" share of the proceeds, but no evidence suggested a gang would provide "backup" in such instances.  Moreover, the duo's movements here appear to have been outside Southside's Santa Ana territory, rendering even more speculative the notion Guerrero risked his safety and newfound freedom to "back up" a nonmember.  True, other reasonable conclusions include the possibility Guerrero assisted Diaz solely based on their friendship, or that Southside had an interest in monitoring large transactions even extraterritorially to ensure their "tax" cut, without necessarily providing any "backup."

But the fact that circumstances may be reconciled with an explanation in which Diaz was not a Southside member does not warrant reversal.  Rather, the standard of review requires that we affirm the judgment unless under "no hypothesis whatever is there sufficient substantial evidence to support it."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)   On appeal, we must view the evidence in the light most favorable to the

7

judgment (*People v. Elliot* (2005) 37 Cal.4th 453, 466), and it is the trier of fact's exclusive province to assess witness credibility and to weigh and resolve conflicts in the evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) Thus, a defendant attacking the sufficiency of the evidence "bears an enormous burden." (*Ibid.*)

Here, as we have explained, the jury reasonably could conclude Guerrero's veteran status called for his participation in the methamphetamine distribution scheme given the large quantity for sale, and that in doing so he provided "back up" for Diaz. Based on these factors, the jury reasonably could infer Diaz was "another South[side] member" as Andrade testified, and we therefore must affirm Guerrero's conviction for promoting, furthering, or assisting "in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a).)

B.      *The Simple Possession Conviction Must Be Reversed as a Lesser Included Offense*

The Attorney General concedes Guerrero's conviction for simple possession must be reversed. We agree. As the Attorney General explains, "Simple possession is a lesser included offense of possession for sale when the offenses are based on the same contraband." Because the jury found Guerrero guilty of possession for sale of a controlled substance (Health & Saf. Code, § 11378) based on the same conduct as his conviction for simple possession, the latter must be reversed.

## III

### DISPOSITION

We reverse the conviction for simple possession of methamphetamine (Health & Saf. Code § 11377, subd. (a)) as a lesser included offense, but affirm the judgment in all other respects. The trial court is directed to forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.