Filed 10/10/13  P. v. Serrano-Aguilera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESUS ENRIQUE SERRANO-AGUILERA,<br><br>Defendant and Appellant. | F064196<br><br>(Super. Ct. Nos. BF128858A & BF136267A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Jesus Enrique Serrano-Aguilera (defendant), a convicted felon, was arrested for unlawfully possessing a firearm. The arresting officer testified that defendant admitted he was a gang member and that he was delivering the firearm to another gang member. There was no evidence defendant was promoting, furthering, or assisting specific felonious criminal conduct of the other unidentified gang member or any other gang member.

Last year, the California Supreme Court held a gang member does not violate Penal Code[1] section 186.22, subdivision (a) (section 186.22(a)) by committing a felony alone. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1128 (*Rodriguez*).) Applying this rule here, we reverse defendant's conviction on count 2.

Defendant also claims the trial court improperly denied his motion for a continuance and trial counsel failed to effectively articulate the necessity of the continuance. Finally, defendant claims the section 186.22, subdivision (b)(1) enhancement was submitted to the jury on an "unlawful theory." We disagree with these contentions and affirm the remainder of the judgment.

## FACTS

Defendant was charged with unlawful possession of a firearm as a felon (count 1 – former § 12021, subd. (a)(1)[2]), active participation in a criminal street gang (count 2 – § 186.22(a)), and resisting a peace officer (count 3 – § 148, subd. (a)(1)).[3] The information alleged defendant committed the firearm offense for the benefit of, at the

---

[1]   All subsequent statutory references are to the California Penal Code unless otherwise noted.

[2]   Section 12021 was repealed as of January 1, 2012 (Stats. 2010, ch. 711, § 4). (See § 29800, subd. (a)(1).)

[3]   Kern County Superior Court case No. BF136267A.

direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1).) A prior felony conviction for robbery was alleged as to counts 1 and 2. (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e); 667, subd. (a).)

A preliminary hearing was held on September 2, 2011. Defendant appeared in court with counsel. Officer Matthew Tramel testified at the preliminary hearing that defendant "admitted to being in possession of the firearm and that he was delivering it to a fellow … gang member."

On November 7, 2011, defendant appeared in court with counsel for trial. Defense counsel moved for a continuance (§ 1050) in order to file a *Pitchess*[4] motion. The *Pitchess* motion was predicated on defendant's allegation that Tramel fabricated defendant's admission that he was bringing the gun to a gang member. The trial court asked why the motion was being brought the day of trial and not earlier. Defense counsel said defendant had not told him of the grounds for the *Pitchess* motion until earlier that morning.

The prosecutor objected, claiming the request was not timely. The trial court then stated its ruling:

> "Pitchess motions are generally covered under Evidence Code Section 1043. I've had an opportunity to review that, and I did review that, and it appears that -- two things: Number one, the motion is untimely. Here we are just moments from conducting motions in limine and bringing a panel over, number one. Had plenty of time to bring that up.
>
> "And, number two, it does not satisfy the numbered requirements as to the number of hoops that need to be jumped through in order to bring that motion.

---

[4] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

"So the motion to continue in order to bring a Pitchess motion is going to be denied as being untimely and not satisfying those requirements … per Evidence Code Section 1043."

The court then took up other motions in limine.  Shortly thereafter, defense counsel said, "I believe [defendant] had some disputes with my representations to the Court during my motion a minute ago, and I believe he would like to resolve those by way of a Marsden[5] motion."  The court then held a *Marsden* hearing.  The court found credible defense counsel's representation that defendant first told him about the grounds for the *Pitchess* motion on the morning of November 7, 2011.  The court denied the *Marsden* motion and reiterated that the motion to continue the trial was not timely.

During the trial, Tramel testified he was a police officer with the gang unit of the Bakersfield Police Department.  On April 3, 2011, he and Officer Joe Cooley were on patrol in a marked police vehicle near the streets of Hayslett and Buddy.  The officers were patrolling the area in response to criminal activity related to the Colonia Bakers street gang.

While on patrol, Tramel observed defendant riding a bicycle against traffic.  Tramel activated his lights and siren when defendant was "no more than 25 feet, 20 feet" ahead of him.  Defendant began to pedal "extremely fast" away from the officers.  Tramel pulled alongside defendant, identified himself as a police officer, and ordered defendant to stop several times.  Defendant said, "Yeah, yeah, yeah.  I got no brakes," and continued to accelerate.  He continued for 10 to 15 seconds and eventually came to a stop.

Tramel exited his vehicle and ordered defendant to turn around and place his hands on his head.  Defendant did not turn around, and took one large step away.  Tramel reached out and grabbed his left hand.  Defendant pulled his hand from Tramel's grasp.

---

**5**     *People v. Marsden* (1970) 2 Cal.3d 118.

4.

Cooley came to assist, and gained control of one of defendant's hands. Tramel controlled the other hand and they were able to handcuff defendant.

Tramel asked whether defendant had anything illegal "on him." Defendant said he had a firearm in his front right pants pocket. Tramel found a semiautomatic .32-caliber pistol loaded with three live rounds in defendant's front right pants pocket. Tramel performed a "functions check" of the weapon, and determined it was operational.

Tramel read to defendant the *Miranda*[6] warnings. Tramel then asked why defendant was "running from officers." Defendant replied he did not want to go to jail. Tramel asked what defendant was doing with the firearm, and testified defendant responded as follows:

> "He stated that he was delivering it to another member of the Colonia Bakers. I believe his words were to the effect of he was delivering the gun to a 'Colonia homie.' Which I had him elaborate on. I asked him to elaborate on. He said it was another member of the Colonia Bakers criminal street gang."

Defendant said he considered himself a member of the Colonia Bakers criminal street gang. He said he also had friends and family in the gang.

Officer Isaac Aleman, a Bakersfield police officer assigned to the gang unit, offered an expert opinion that defendant was an active participant of the Colonia Bakers gang on April 3, 2011.

Aleman testified that the Colonia Bakers gang is a subset of the Sureno gang, that the Colonia Bakers engage in an ongoing pattern of criminal activity, and that their primary criminal activities include illegal weapons possession, robbery and murder.

The day before he testified, Aleman took photographs of defendant's tattoos. Defendant had a tattoo across the back of his head that read "Colonia" in letters of "about five inches." Defendant had a tattoo reading "Eastside" on his right forearm, and a tattoo

---

**6** *Miranda v. Arizona* (1966) 384 U.S. 436.

of the word "Colonia" on his left hand. Defendant had tattoos saying "RIP colonieros," "Shrek," and "Crow." Aleman testified that Shrek and Crow were Colonia Bakers gang members murdered by a rival gang. On defendant's index finger was a tattoo of the letter "C." Defendant also had a tattoo of a skull across the top portion of his hand. Aleman testified this was "a common tattoo among Colonia Bakers gang members."

Aleman testified that when defendant was booked on April 3, 2011, he was asked whether he belonged to any gang. Defendant said he belonged to "South" and, when asked which clique, he said "Colonia."

In prior bookings on July 28, 2002, July 31, 2009, and September 12, 2010,[7] defendant claimed "South" and "Colonia." He also claimed "South" in bookings on December 2, 2004, and May 6, 2007.

The jury convicted defendant as charged in counts 1, 2 and 3, and found the gang enhancement to be true. The trial court found the prior conviction allegations to be true.

The court sentenced defendant to 15 years in prison, as follows. On count 1, unlawful possession of a firearm, defendant was sentenced to the upper term of six years, plus four years for the gang enhancement (§ 186.22, subd. (b)(1)), plus five years for the section 667, subdivision (a) enhancement. On count 2, active gang participation, defendant was sentenced to the upper term of six years. That term was stayed pursuant to section 654. On count 3, resisting a peace officer, defendant was sentenced to one year. That term was ordered to run concurrent to the sentence on count 1.

Defendant appealed.[8]

---

**7**     On September 12, 2010, defendant told officer Ryan Kroeker he had been a member of the Colonia Bakers gang "for a long time."

**8**     Defendant also appealed in Kern County Superior Court case No. BF128858A. He raises no issue regarding the judgment in case No. BF128858A, and has not briefed the underlying facts. In that case, defendant entered a negotiated plea of no contest to one count of robbery (§ 212.5, subd. (c)). Imposition of sentence was suspended, defendant was admitted to probation for three years, and he was ordered to do one year in

6.

# DISCUSSION

## I.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION FOR A CONTINUANCE

Defendant contends the trial court abused its discretion and violated due process when it denied his motion for a continuance. We disagree.

"[A]ll proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time." (§ 1050, subd. (a).) "Continuances shall be granted only upon a showing of good cause." (*Id*., subd. (e).) If a moving party fails to give proper notice of a motion for continuance, and is unable to show good cause for that failure, "the motion for continuance shall not be granted." (*Id*., subd. (d).)

Defendant argues that trial counsel "had just learned of the need for a continuance, explaining the delay." But explaining a delay does not necessarily excuse it. Defendant was present at the preliminary hearing at which Tramel testified. Yet, defendant did not tell counsel he believed Tramel had fabricated defendant's statement until the day set for trial, more than two months after the preliminary hearing. Defendant's failure to tell counsel of his allegation that Tramel was lying about a key piece of evidence is not good cause justifying delay in moving for a continuance.

Because defendant made no showing of good cause why the motion was not made earlier, the trial court properly denied it. (See § 1050, subds. (d), (e).)

## II.

## DEFENSE COUNSEL WAS NOT PREJUDICIALLY INEFFECTIVE

Defendant next claims his trial counsel was ineffective "for failing to adequately explain the necessity of a continuance." (Full capitalization omitted.) Specifically,

---

the county jail. Probation was ultimately revoked, and defendant was sentenced to three years in prison concurrent to his sentence in this case.

defendant claims trial counsel did not explain "why a *Pitchess* motion was so critical." We disagree.

In making the continuance motion, counsel referenced Tramel's allegation that defendant said he intended to deliver the gun to a gang member. Counsel then explained defendant believed the officer was lying. We believe this explanation does convey why counsel wanted to bring a *Pitchess* motion. The import of counsel's statements is self-evident: if Tramel was lying about defendant's statement, the evidence of gang-relatedness would be weakened and a *Pitchess* motion might lead to evidence that would bolster defendant's argument on this point. Defense counsel simply made an enthymematic argument rather than explicitly stating this obvious, implied conclusion that he believed a *Pitchess* motion would be helpful to his client's case. Defense counsel was not constitutionally ineffective.

Even if defense counsel had inadequately articulated the importance of the anticipated *Pitchess* motion, defendant suffered no prejudice.

"A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness *and prejudice under a test of reasonable probability of a different outcome*. [Citation.] Defendant is unable to show that counsel's performance resulted in prejudice to him." (*People v. Ochoa* (1998) 19 Cal.4th 353, 414.) The trial court did not deny the continuance motion because it believed the *Pitchess* motion was unimportant to the defense, it denied it as untimely.[9] Thus the record shows that even the most robust explanation of "why a *Pitchess* motion was so critical" would not have resulted in a different outcome.

---

[9] The court also denied the motion for failure to comply with Evidence Code section 1043. We do not address that part of the trial court's ruling as the issue before the trial court was whether a motion to continue should be granted in order to file a *Pitchess* motion, and that is the issue raised by the parties on appeal.

8.

## III.

### THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION FOR VIOLATING SECTION 186.22(A)

Defendant next contends the evidence is insufficient to support his conviction for violating section 186.22(a). We agree.

Section 186.22(a) provides, in part:

> "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished .…"

"The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*Rodriguez, supra,* 55 Cal.4th at p. 1130.)

The third element is the focal point of defendant's contention. Defendant argues section 186.22(a) does not punish the "direct perpetration of an offense by a gang member" and "there must be more than one participant" involved to establish a violation of section 186.22(a). We agree with the latter point, and therefore reverse the conviction.[10]

---

**10** The former point is incorrect. Section 186.22(a) does punish a gang member who directly perpetrates a crime. "Nothing in the language of section 186.22(a) would suggest that one may not promote, further, or assist 'in any felonious criminal conduct by members of that gang' by *either* aiding and abetting other gang members in committing a felony *or by directly committing a felony with other gang members*." (*Rodriguez, supra,* 55 Cal.4th at pp. 1135-1136, italics added.) Defendant's focus on direct perpetration versus aiding and abetting is misplaced, because either type of crime could potentially satisfy section 186.22(a). The important distinction is whether defendant promoted,

After the parties completed briefing in this case, the California Supreme Court issued its decision in *Rodriguez*. In *Rodriguez*, the Court resolved the issue presented here.

"The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1132.) Thus, a gang member does not violate section 186.22(a) by committing a felony alone. (*Rodriguez, supra,* at p. 1128.)

Here, the Attorney General cites no evidence defendant committed an underlying felony with other gang members. Instead, the Attorney General argues defendant's claim is precluded by our holding in *People v. Ngoun* (2001) 88 Cal.App.4th 432 (*Ngoun*). There, we held that section 186.22(a) applies to "the perpetrator of felonious gang-related criminal conduct as well as to the aider and abettor." (*Ngoun, supra,* at p. 436.) In *Ngoun*, the defendant went to a party *with other members of his gang*, asked a fellow gang member to "'watch his back'" and then shot the victim. (*Id.* at p. 437.) "Nothing in the language of section 186.22(a) would suggest that one may not promote, further, or assist 'in any felonious criminal conduct by members of that gang' by either aiding and abetting other gang members in committing a felony *or* by directly committing a felony with other gang members. *Ngoun* did not address the present issue of whether one committing a felony alone may violate section 186.22(a)." (*Rodriguez, supra,* 55 Cal.4th at pp. 1135-1136.)

The Attorney General also cites to our prior decision in *People v. Sanchez* (2009) 179 Cal.App.4th 1297 and to *People v. Salcido* (2007) 149 Cal.App.4th 356. To the

---

furthered, or assisted felonious criminal conduct of *other* gang members or, instead, committed the felony alone.

extent *Sanchez* and *Salcido* were inconsistent with the opinion in *Rodriguez*, they have been disapproved. (*Rodriguez*, *supra*, 55 Cal.4th at pp. 1136-1137 & fn. 8.)

"[W]ith section 186.22(a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony .…" (*Rodriguez, supra,* 55 Cal.4th at p. 1138.) In this case the evidence was insufficient to establish that defendant promoted, furthered, or assisted specific, felonious criminal conduct by *other* members of the Colonia Bakers. The conviction on count 2 must be reversed.[11]

**IV.**

**DEFENDANT FAILED TO PRESERVE FOR REVIEW HIS CLAIM REGARDING THE PROSECUTOR'S CLOSING ARGUMENT**

Defendant contends the gang enhancement "was submitted to the jury on an unlawful theory." (Full capitalization omitted.) Specifically, he posits that the prosecutor "argued that [the gang expert's testimony] showed appellant's intent to benefit the gang by giving the gun to a gang member. [Citation.] However, possession of a weapon is not necessarily illegal. Thus, it was an unlawful theory."

Defendant's opening brief cites to *People v. Green* (1980) 27 Cal.3d 1 as the sole authority for his contention. *Green* is distinguishable. In *Green*, a special circumstance found by the jury involved the issue of whether a murder was committed during the commission of a kidnapping. (*Id.* at p. 62.) The trial court incorrectly instructed the jury on an element of the special circumstance and the district attorney argued the evidence to the jury on alternate theories, some of which were "legally correct and others [that were] legally incorrect." (*Id.* at pp. 63-64, 69, abrogated by *People v. Martinez* (1999) 20 Cal.4th 225.) The court held that, when "the reviewing court cannot determine from the

---

[11]     Because we reverse the section 186.22(a) conviction, we need not address defendant's claim that the trial court improperly instructed the jury on that crime with CALCRIM No. 1400.

record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*People v. Green, supra,* 27 Cal.3d at p. 69.) In *Green*, the jury instructions given by the trial court were deficient and the deficiency was such as to "ratif[y] the prosecutor's error." (*People v. Morales* (2001) 25 Cal.4th 34, 43.)

Defendant does not raise any claims of instructional error regarding the gang enhancement; he has not asserted that the *trial court* "presented the state's case to the jury on an erroneous legal theory or theories." (*People v. Morales, supra,* 25 Cal.4th at p. 43, italics added.) "[W]e presume that the jury relied on the instructions, not the arguments, in convicting defendant." (*Id.* at p. 47.) Thus, even if the prosecutor misstated the law, as defendant claims, "such an error would merely amount to prosecutorial misconduct [citation] during argument, rather than trial and resolution of the case on an improper legal basis." (*Id.* at p. 43.) Claims of prosecutorial misconduct must be brought to the trial court's attention by timely objection and a request must be made for an admonition. (*People v. Parson* (2008) 44 Cal.4th 332, 359.) Defendant did not do that; his claim has not been preserved for review.

## V.

### REVERSAL OF THE CONVICTION ON COUNT 2 RENDERS DEFENDANT'S FINAL CONTENTION MOOT

Defendant argues the abstract of judgment should be amended to reflect a stay of the prison term on count 2 pursuant to section 654. Because we reverse the conviction on count 2, this issue is moot.

### DISPOSITION

Defendant's conviction in count 2, of violating Penal Code section 186.22, subdivision (a), is reversed and sentence thereon is vacated. In all other respects, the judgment is affirmed.

The trial court is directed to prepare an abstract of judgment reflecting this change. Additionally, the amended abstract should reflect that the trial judge in the case was

12.

Judge John R. Brownlee not, as the abstract of judgment lists, Judge Twisselman II. The trial court shall transmit a certified copy of the amended abstract of judgment to the appropriate authorities.

_____

DETJEN, J.

WE CONCUR:

_____

WISEMAN, Acting P.J.

_____

POOCHIGIAN, J.

13.